**Robert Edward AKRIDGE, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 45477.**

Court of Criminal Appeals of Texas.

May 9, 1973.

Lake, Delaney & Mayhan by Howard O. Lake, Houston, for appellant.

Carol S. Vance, Dist. Atty., Phyllis Bell and Jimmy James, Asst. Dist. Attys., Houston, Jim D. Vollers, State's Atty., and Robert A. Huttash, Asst. State's Atty., Austin, for the State.

## OPINION

ONION, Presiding Judge.

This appeal arises out of a conviction for murder wherein the death penalty was assessed by the jury.

Appellant's brief does not set forth separately each ground of error of which he desires to complain and, thus, is not in compliance with Article 40.09 § 9, Vernon's Ann.C.C.P. See Hinkle v. State, 442 S. W.2d 728 (Tex.Cr.App.1969).

Further, it is difficult to determine just what contentions appellant seeks to advance since they are somewhat ambiguously stated in narrative form and no reference is made to any page number in this voluminous record of 1,961 pages. No citation of authority is given. Nevertheless, we have examined each contention as best we have been able to determine them.

Since the sufficiency of the evidence is not challenged, suffice it to say the appellant was shown to be the "trigger man" in the alleged hired killing of Dr. Robert Pendleton. Companion cases arising out of the same offense are Tucker v. State, 461 S.W.2d 630 (Tex.Cr.App.1971), and Burkhalter v. State, 493 S.W.2d 214 (Tex. Cr.App.1973).

The main thrust of appellant's contentions is that his extrajudicial confession was involuntary and should not have been admitted into evidence.

Prior to admitting the confession into evidence, the trial court conducted a separate hearing out of the presence of the jury in compliance with Article 38.22, Vernon's Ann.C.C.P., and Jackson v. Denno, 378 U. S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964).

That hearing revealed that the 27-year old appellant was arrested in Houston by two Texas Rangers at approximately 12:45 p. m. on February 10, 1968 by virtue of a warrant from Newton County where appellant had been indicted for cattle theft.[1] He was taken before Justice of the Peace Lee in Harris County and, at 2:52 p. m., was informed of the cattle theft accusation and was administered warnings in accordance with Article 15.17, Vernon's Ann.C. C.P., and Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

Appellant was then taken by the arresting officers to Newton County and placed in jail at approximately 6 p. m. on the same date. During the trip to Newton County, which consumed several hours, there was no interrogation of the appellant nor was any mention made of the instant murder charge. Appellant slept an hour or so during the trip, ate a sandwich, and consumed a soft drink.

At 7:30 p. m., appellant was taken before Justice of the Peace Rowe of Newton County and was informed of the instant murder charge, and warned in accordance with Article 15.17, supra, and the Miranda decision.

Neal Rogers and Neal Matthews, Harris County Sheriff investigators, then commenced to interrogate the appellant and did so for approximately an hour and fifty minutes. From approximately 10 p. m. to 12:15 a. m., the appellant was questioned by Officers Cornett and Holt of the Pasadena Police Department. Prior to this questioning, Officer Cornett warned the appellant in accordance with Article 38.22, supra. Cornett testified that the appellant, who had earlier signed a form to indicate an understanding of his rights, stated orally that he did not want a lawyer. During this period of interrogation, the appellant denied the killing but made some admissions indicating guilty knowledge.

Ellis Means, Chief of the Pasadena Police Department, began interrogating the appellant at approximately 12:30 a. m. on February 11th. He was later joined by Ranger Neal. About 1:15 a. m., the appellant, who had had a sandwich at 9 p. m., was given a cup of coffee. Then, near 2 a. m., the appellant told Means and Neal about his involvement as the hired killer of Dr. Pendleton. Other officers were then summoned and appellant repeated his story. Officer Cornett then made longhand notes as the appellant recounted his story a third time.

Newton County Sheriff Humphries testified that, after he took the appellant to his cell around 2:30 a. m., the appellant told him that he (the appellant) felt like a different person now that he had gotten "his business straight" and "everything was clear." Appellant went to sleep about 3 a. m.

At 9 a. m. on February 11th, the appellant was awakened. He was later shown a typed copy of the confession he had given the officers. He was again warned by Of-

[1]. It appears this "alias capias" warrant was issued when the sureties on appellant's bond filed an "off bond" affidavit.

ficer Cornett in accordance with Article 38.22, supra. Appellant read the confession containing the warnings required by Article 38.22, supra, and *Miranda*, made a correction as to his address, initialed some typographical errors, and signed the three-page confession at 10:30 a. m.

In addition to the warnings as to the right to silence, right to retained or appointed counsel, etc., contained on the face of the confession there were the following statements:

"  .   .   .   and I now freely and voluntarily waive my right to a lawyer and to remain silent and make the following voluntary statement  .   .   .   . "

and

"While making this statement I have not asked for nor wanted the presence or advise (sic) of a lawyer. At no time during the making of this statement did I ask to stop or want to stop making this statement."

All of the officers testified they did not abuse or mistreat the appellant nor see anyone else do so. They related the appellant sometimes appeared nervous during interrogation, but was mentally alert, not overly tired, etc.

Carol Vance, Harris County District Attorney, testified that he arrived in Newton County and talked alone with the appellant after the signing of the confession, that the appellant denied being mistreated and said, "No, they have been kind to me." Vance saw no marks or bruises on the appellant.

At the conclusion of the separate hearing, at which the appellant did not testify, the court made detailed findings of fact and conclusions of law finding the confession to have been voluntarily given and admitted the same into evidence.

After the confession had been admitted into evidence before the jury, the appellant, testifying in his own behalf, generally corroborated the sequence of events related at the separate hearing, but testified one member of each of the three interrogation teams was nice to him while the other would physically abuse him. He related Investigator Rogers "kneed me in my stomach and in my privates" and said "if I threw up, he was going to make me lick it up"; that Officer Holt stepped on his toes, hit and kicked him; that Chief Means kicked his knees, judo chopped him on the neck, kicked him in the stomach and threatened to take him to the woods and say that he tried to run. He testified he "couldn't stand the whipping any more" and gave the officers the statement which he didn't sign until the next morning.

On cross-examination, the appellant, who had previously received a five-year probated sentence in California, admitted he had no bruises as a result of the beatings he received, but attributed this to his thick Levis (trousers) and the fact that he was not struck in the face.

In rebuttal, the State called each of the officers accused and each specifically denied having performed the acts testified to by the appellant. District Attorney Vance again testified. Also, Lloyd Pearson, a KTRH Radio reporter, testified he had interviewed the appellant in the Harris County Jail on February 12, 1968, and that the appellant denied being mistreated and stated he had given a voluntary statement.

The issue of the voluntariness of the confession was submitted to the jury under instructions of which appellant made no complaint.

■  Appellant first contends that the confession was inadmissible because the warnings given by Justice of the Peace Rowe were not in accordance with Article 15.17, supra, in that he was never warned of the actual charge against him or the name of the alleged victim. The testimony of Judge Rowe, and several of the officers, was to the effect that the Judge had advised the appellant of the "murder charge." This testimony was undisputed at the sep-

arate hearing on voluntariness and the trial court made a finding to this effect.

Appellant apparently bases his claim upon his testimony before the jury that he was not so advised by Judge Rowe. He acknowledged, however, that prior to any interrogation by the officers they informed him of the murder charge against him.

Even if the warnings administered by Judge Rowe were not in compliance with Article 15.17, supra, for the reason claimed, the same would not vitiate the confession. A similar contention was advanced in Easley v. State, 448 S.W.2d 490, 492 (Tex.Cr.App.1970), where this court, noting the 1967 amendment to Article 38.-22, supra, wrote:

" . . . No longer is the validity of a confession dependent under Texas statutes upon warnings by both a magistrate under Article 15.17, supra, and the person taking the confession under Article 38.22, supra. Proper warnings by either may now suffice. . . ."

See also Easley v. State, 454 S.W.2d 758 (Tex.Cr.App.1970); Dunlap v. State, 462 S.W.2d 591 (Tex.Cr.App.1971), and Shadrick v. State, 491 S.W.2d 681 (Tex.Cr. App.1973).

Appellant advances no claim that he was not properly warned by the officers in accordance with Article 38.22, supra, prior to the taking of the confession. The record reflects that he was.

Appellant's first contention is overruled.

Next, appellant contends

" . . . the facts and circumstances surrounding the arrest were of such a nature as to cast an air of suspicion around circumstances as to whether or not ROBERT AKRIDGE could have, at any time, contacted or had any Attorney of his choice. He was at the time in a strange county, at night, in the basement of the old Newton County Courthouse among people he did not know, and with no friends or relatives who could possibly contact him or know at that time where he might be."

This assertion is made in appellant's brief and it is not supported by the record.

Further, Judge Rowe and the officers testified that appellant understood the warnings given and at no time requested counsel, either retained or appointed. Judge Rowe testified that if the appellant had requested counsel he would have "gotten him one."

In his own testimony, appellant made no claim that he desired to consult with a lawyer or anyone else and was denied the opportunity to do so. Appellant's second contention is denied.

■ Throughout his brief, the appellant complains of the constant duress and threats that were "hovering over" him during the entire interrogation, stating, "The facts and circumstances surrounding the interrogation and his [appellant's] warning *was* (sic) a denial of his rights of due process." It is apparently appellant's contention that when the record is considered in its entirety, it will support the fact that the appellant's confession was taken in violation of due process. See Clewis v. Texas, 386 U.S. 707, 87 S.Ct. 1338, 18 L.Ed.2d 423 (1967). This court dealt with a similar contention in Harris v. State, 457 S.W.2d 903 (Tex.Cr.App.1970), reversed on other grounds, 403 U.S. 947, 91 S.Ct. 2291, 29 L. Ed.2d 859 (1971).

The facts have already been summarized and need not be repeated. There was a showing that there was a compliance with the *Miranda* decision. There was no showing, other than appellant's testimony. of abuse, coercion, compulsion or persuasion. There was no showing that appellant was deprived of food or drink. He was allowed to use the restroom when requested, to smoke his cigarettes, etc. At all times he appeared to be alert and reasonably rested. After he orally confessed, he slept from 3 a. m. to 9 a. m. He was

again warned of his rights, read and signed the written statement. If he had not signed the written statement, the same would not have been admissible against him. See Article 38.22, supra. It is true that appellant was taken to a county other than that of his arrest, but this was by virtue of a warrant from the county of interrogation. It was also shown that appellant was interrogated, as described, off and on, from 7:30 p. m. until near 2 a. m., but the 27-year old appellant with previous experience with law violations did not complain that the length of the interrogation affected him but only that the physical abuse affected him, which testimony was clearly refuted.

Appellant also claims numerous inconsistencies between the facts related in the confession and the facts proven at the trial, contending the same reflect involuntariness. Just where in the record all these inconsistencies appear is not pointed out. There were, of course, some inconsistencies. We noted, however, the court found the confession voluntary and admissible in a separate hearing and the issue of voluntariness was submitted to the jury under appropriate instructions. The inconsistencies here alleged do not involve the main fact that the appellant shot and killed the deceased.

Considering the "totality of the circumstances," we cannot conclude the appellant was deprived of due process rendering his written confession involuntary. See Harris v. State, supra.

■ Appellant's final contention is the trial court erred in overruling his motion to restrict the State to peremptory challenges as to those prospective jurors who have "conscientious scruples" in regard to the infliction of the death penalty rather than allowing the State to challenge such prospective jurors for cause.[2]

It is appellant's contention that jurors who approve of capital punishment are (1) more likely to adjudge an accused guilty than jurors who disapprove of capital punishment, (2) more confident of the correctness of their judgment as to guilt or innocence, (3) more likely to assess a more severe punishment, and (4) more likely to be biased in favor of the prosecution.

These claims that such jurors are prosecution prone have been advanced before with no more data than presented here and such claims have been rejected. Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968); Bumper v. North Carolina, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968); Parks v. State, 437 S.W.2d 554 (Tex.Cr.App.1969); Bradley v. State, 450 S.W.2d 847 (Tex.Cr.App. 1970), and Solis v. State, 492 S.W.2d 561 (Tex.Cr.App.1973).

It has been made to appear that on August 9, 1972, the Honorable Preston Smith, Governor of Texas, upon the recommendation of the Board of Pardons and Paroles, commuted the appellant's punishment to life imprisonment. Thus, the judgment of the trial court is ordered reformed to show the punishment assessed as being life. Cf. Whan v. State, 485 S.W.2d 275 (Tex.Cr. App.1972), in which this writer dissented.

As reformed, the judgment is affirmed.

2. At the time of appellant's trial, this was a permissible challenge for cause. See Article 35.16, Vernon's Ann.C.C.P. Now see Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), holding the death penalty unconstitutional.