Donald Elliot SMITH, Appellant,

v.

The STATE of Texas, Appellee.

Louis Albert SMITH, Appellant,

v.

The STATE of Texas, Appellee.

Nos. 51370, 51371.

Court of Criminal Appeals of Texas.

Feb. 16, 1977.

Rehearings Denied March 9, 1977.

Polk Shelton, Austin, for Donald Elliot Smith.

Laird Palmer, Austin, for Louis Albert Smith.

Richard A. Fielder, Dist. Atty., Lockhart, Jim D. Vollers, State's Atty., and David S. McAngus, Asst. State's Atty., Austin, for the State.

## OPINION

ODOM, Judge.

These are appeals from convictions under the former Penal Code for robbery by firearms. Appellants were tried jointly. The jury assessed each appellant's punishment at ninety-nine years' imprisonment.

The appellants' first ground of error asserts that their confessions were improperly admitted into evidence. Appellants contend that their confessions were shown to be involuntary and that the State failed to rebut sufficiently this showing as required by our decisions in *Sherman v. State*, Tex. Cr.App., 532 S.W.2d 634, and *Farr v. State*, Tex.Cr.App., 519 S.W.2d 876.

We agree with this contention insofar as it relates to the admission of Louis Albert Smith's confession. We hold, however, that Donald Elliot Smith's confession was properly admitted into evidence.

## LOUIS ALBERT SMITH'S CASE

Louis Albert Smith, in the company of his attorney, surrendered to the F.B.I. in New Orleans on May 29, 1973. After being charged with robbery he was placed in the New Orleans House of Detention for confinement. He signed written statements confessing to the robbery for F.B.I. agents P. M. King and B. S. Thomas on June 5 and June 6, 1973.

Louis Smith testified that prior to meeting with the F.B.I. agents and giving the first statement he was taken upstairs in the House of Detention and beaten and threatened by New Orleans police, who told him he would be returned to Texas and receive worse treatment if he did not sign a statement confessing to the Texas robbery. During the meeting on June 5, at which he signed the first statement, the F.B.I. agents presented him with the prepared statement and promised him he would receive a probated federal sentence in New Orleans if he signed it, and that he would remain in federal custody instead of being returned to Texas. Smith testified he thought the meeting with the F.B.I. and the prepared F.B.I. statement were a continuation of what he had been told by the New Orleans police during his previous beatings.

After signing the first statement he was returned to his cell, and then late that night or about 3:00 a. m. the next morning he was

taken back upstairs by the local police and beaten and threatened again because, according to Smith, the first statement he had signed was the wrong statement. He met again with the F.B.I. agents on June 6 and signed the second statement confessing to the robbery and, additionally, to a rape committed during the robbery. Smith also testified that he signed the statement only because he was beaten by the New Orleans police and was threatened by them with further beatings if he would not sign.

Agent King, on being called as a witness for the State, testified that he and Thomas interviewed Louis Smith at the New Orleans House of Detention on June 5 and 6, 1973. He testified that during the June 5 interview Smith stated that he wanted to get the matter cleared up, that he signed a waiver of rights form, and that physically he appeared normal. After giving and signing the June 5 confession, according to King, Smith was told by the agents that they did not believe it in its entirety because the rape was not admitted. Smith allegedly replied, "All right, I'll admit the rape but I'll talk to you tomorrow and give you a statement tomorrow." The June 5 interview was then terminated. On June 6, King testified, Smith "came voluntarily, read his [waiver of rights] form, signed it, and proceeded to give us the story."

On cross-examination King stated that he had no knowledge of whether Louis Smith was coerced, beaten, or threatened by law enforcement officers before the interviews in an attempt to induce him to sign any statements.

Agent Thomas testified that he and King interviewed Louis Smith at the New Orleans House of Detention on June 5 and 6. He corroborated King's testimony that on June 5 Smith signed the waiver of rights form and said he wanted to clear the record and get the matter straightened out, and that after taking the June 5 statement the agents indicated they did not believe it entirely, prompting Smith's reply, "Well, if you don't believe me completely, come back tomorrow and I'll give you a statement to set the record straight." He testified the

June 6 statement was taken after Smith signed another waiver of rights form, and that Smith said he was making the statement on the advice of his lawyer and because he wanted to get the matter resolved and wanted the truth to come out. On cross-examination Thomas testified that he had no knowledge of what was said to Smith or done to Smith while confined in the New Orleans House of Detention, and that he did not know whether any threats were made or any effort made to abuse or coerce Smith into giving a confession. No New Orleans officers testified.

This record demonstrates that the admission of Louis Smith's confession falls directly within the rule that required reversal in *Farr v. State*, and *Sherman v. State*, supra, in which it was stated:

"It has long been the law of this State that whenever the testimony of the accused as to alleged coercive acts is undisputed, then as a matter of law the confession is inadmissible. [Citations omitted.]" *Farr*, at 880.

"Neither of the officers who testified at the hearing denied or could deny either assertion because there was no showing that either was present when the statements were allegedly made.[1] Cochran, who could have denied the assertions, inexplicably failed to testify. Therefore, under any standard of the State's burden of proof, the trial court abused its discretion in overruling appellant's motion to suppress because appellant's allegations of coercion were not contradicted.[2]

"[1] Cf. *Farr v. State*, Tex.Cr.App., 519 S.W.2d 876, 880 n. 4: 'Had the police officers testified and denied any coercion or *someone present at this incident* denied any use of force, thus contradicting appellant's testimony, the trial judge as trier of fact could have determined the confession to be voluntary.' (Emphasis added)

"[2] It should be understood that if the State had presented a reasonable explanation of Cochran's failure to testify, such as his death or their inability to locate him, the trial court would have been free to disbelieve appellant's testimony. When the State neither placed Cochran on the stand nor explained his absence, the obvious inference is that he did not testify because he could not deny appellant's allegations. See *Sims v. Georgia*, 389 U.S. 404, 88

S.Ct. 523, 19 L.Ed.2d 634 (1967); *Haynes v. Washington*, 373 U.S. 503, 83 S.Ct. 1336, 10 L.Ed.2d 513 (1963). No such inference could be made, however, if there were an explanation of the absence of the witness." *Sherman*, at 636.

Louis Smith's contention must be sustained because his allegations of coercion were not rebutted by the State. His conviction must be reversed and the cause remanded for a new trial.

## DONALD ELLIOT SMITH'S CASE

■ Donald Elliot Smith was arrested on the afternoon of May 23, 1973, near Slidell, Louisiana, in connection with a Mississippi robbery. F.B.I. agent Thomas observed appellant at the scene of the arrest. He was taken to a local jail for the night, and the next day was returned to the vicinity of his arrest to search for hidden money from the Mississippi robbery. On the afternoon of that day, the 24th, appellant approached F.B.I. agent Thomas, who was accompanying appellant and local police officers on the search, and orally confessed to the Texas robbery. The next day Thomas took a detailed oral confession to the Texas robbery from the appellant. Later that day he was driven from Slidell to Jackson, Mississippi, where on the 26th he met with a Texas Ranger and two deputy sheriffs from Caldwell County who took a written confession. It was this confession that was introduced against him at trial and is now challenged as being the result of beatings and threats.

Donald Smith testified to the following mistreatment. On May 23 after his arrest he was beaten by local Louisiana officers in the car on the way to the jail. During the night of May 23–24 he was beaten at the jail. At 3:00 a. m. on May 24 he was transferred to another jail and beaten. During the search for the money on May 24, according to appellant's testimony, he was beaten some more. He also testified that no F.B.I. agent was present during this search. On May 25 he was again taken on a search for the money and again beaten, this time in the presence of the F.B.I. agent, who offered to protect him if he would answer questions. He testified, "I

gave him [Agent Thomas] a statement to stop them [the Louisiana officers] from killing me." He also testified that he refused to sign this statement. After being taken to Jackson, Mississippi, appellant gave the Texas peace officers a statement after they told him, according to the appellant, "You'll never have to come to Texas no more. All we need this information for is to close our records out," and "We know all of this anyway, we know what you did anyway, because you've already told us what you did. We just need this, something to close our records out."

The State, in its effort to establish the voluntariness of the confession, called the three Texas officers who went to Jackson and F.B.I. agent Thomas who was present during some of the events in Louisiana. No Louisiana officers were called.

In direct conflict with appellant's denial of his presence on May 24, agent Thomas stated he accompanied the expedition on its search for the money throughout the day. Late that afternoon, according to Thomas, appellant "called me over and indicated that he wanted to talk to me alone." He further testified:

"I remember Donald Smith telling me that he felt that he was in a lot of trouble because of the Mississippi bank robbery and that he wanted to help himself—he couldn't find the money, he had misplaced it—and to help himself get out of this trouble, to show that he was in good faith, that he would tell me about some other things that he had done. When he told me this I told him that he was not required to do that, and I orally advised him, you know, of his pertinent legal rights, as per the F.B.I. policy.

"Q. And what did he tell you?

"A. Donald Smith told me initially about several local armed robberies that he had committed in and around New Orleans, and then he told me that he had robbed a bank in Lockhart, Texas, along with a friend of his named Louis Smith."

According to Thomas, appellant's first oral confession to the Texas robbery was at ap-

pellant's invitation and on appellant's initiative.

After verifying that there had been a bank robbery in Lockhart, Thomas interviewed appellant again on May 25 and took a detailed statement from him about the Texas robbery. He testified that at this interview appellant again seemed eager to talk. Contradicting appellant's claim that he refused to sign this statement, Thomas testified that it was never presented to appellant to sign, and that it was first typed out from his notes after he returned to his office.

Thomas also testified that although he did not examine appellant for evidence of physical abuse, his physical appearance was the same on the 24th and 25th as it was at his arrest on the 23rd, except that after the first day he was dressed in jail clothes.

With respect to the meeting with the Texas officers in Jackson, Mississippi, the State produced testimony from officers Davis, Brown and Gallat. During the initial warnings to appellant in Jackson, according to Davis, "I also remembered telling him, 'Now, have you been made any threats or promises in regards to this?', and he stated that he had not . . ." Brown gave the following testimony on cross-examination:

"Q. Was he eager to talk to you?
"A. Seemed to be.
"Q. Really wanted to tell you about it?
"A. Well, I'd say he talked very voluntarily.
"Q. Very voluntarily?
"A. (No reply)
"Q. You've testified that he was very cooperative and wanted to talk to you.
"A. Yes, sir."

On direct examination Gallat denied that there was any evidence at all that indicated to him that the statement was not voluntary. On cross-examination he gave the following testimony:

"Q. And you have no knowledge, do you, of anything that anyone, any law enforcement officer, might have said or done to Donald Elliot Smith that might

have forced or induced or coerced him into making this statement?
"A. No, sir.
"Q. If anyone did anything like that, you don't know anything about it?
"A. I don't know anything about it, only what happened the day we were there.
"Q. And nothing happened then?
"A. And nothing happened that day, no.
"Q. Did he seem to be co-operative with you?
"A. Yes, sir.
"Q. Did he seem to be eager to talk to you?
"A. Yes, sir.
"Q. Really wanted to talk to you, didn't he?
"A. Yes, sir.
"Q. Matter of fact, he wanted to tell you everything about the case?
"A. Yes, sir."

The testimony of agent Thomas sufficiently contradicts Donald Smith's claims of coercion and mistreatment in Louisiana. The last alleged beating of the appellant outside of Thomas' presence occurred at 3:00 a. m. on the 24th. The confession, however, was not given until the 26th.

Thomas' testimony that he observed the appellant on May 24 contradicted the appellant's testimony that no F.B.I. agent was present on that day. He denied appellant's alleged beatings and other coercive acts and statements during the day on May 24 and May 25 when Thomas was present. Thomas also contradicted the appellant's testimony that he refused to sign a statement. According to the agent, the statement was never presented to the appellant. Furthermore, Thomas stated that the appellant was eager to talk about the bank robbery and initiated the conversation in regard to this subject.

Further support for the conclusion that appellant's confession was not involuntary can be drawn from the evidence elicited from the Texas officers. Their testimony is sufficient to contradict appellant's allega-

tions that promises were made to him in Jackson.

In *Farr v. State*, supra, we stated:

"It is well settled that the 'totality of the circumstances' is to be examined to determine if a confession is voluntary. E. g. *Beecher v. Alabama*, 389 U.S. 35, 88 S.Ct. 189, 19 L.Ed.2d 35 (1967); *Clewis v. Texas*, 386 U.S. 707, 87 S.Ct. 1338, 18 L.Ed.2d 423 (1967); *Akridge v. State*, Tex.Cr.App., 493 S.W.2d 928 (1973). In the case at bar, there was 'no break in the stream of events' from the initial coercion to the giving of the confession. In fact, the contrary is shown. Hernandez was present to continue the coercive influence at the time the confession was taken. From these facts, we are unable to conclude that the confession was voluntarily made as a matter of law."

The totality of the circumstances surrounding the taking of Donald Smith's confession both shows a significant break in the stream of events and supports our conclusion that it was voluntary. His first ground of error is overruled.

We now address the remaining grounds of error in the appeal of Donald Smith.

██ The second ground of error asserts that the trial court erred in denying appellant's motion for mistrial made after the introduction of an extraneous offense into evidence. Appellant is complaining of the fact that his confession contained a statement that he had smoked some "grass."

Appellant's brief, however, does not direct us to the portion of the record where an objection was made to the introduction of this part of the confession. He has failed to preserve error for review. See *Prine v. State*, Tex.Cr.App., 509 S.W.2d 617.

Appellant's next ground of error complains of the trial court's denial of his motion for mistrial made after the State introduced evidence of a rape which occurred during the robbery. He also urges that the prosecutor's reference to this rape during jury argument was improper, and claims the State's action violated the court's order granting a motion in limine as to such matters.

██ This contention is without merit. Normally, evidence of an extraneous offense is not admissible unless it meets the requirements developed by this Court in *Albrecht v. State*, Tex.Cr.App., 486 S.W.2d 97. Such requirements were met in the case at bar. Furthermore, objection to the evidence did not assert violation of the motion in limine nor did it complain of denial of an opportunity to prepare a defense to the rape charge.

The rape occurred during the commission of the bank robbery and was perpetrated by a party to the offense charged in the indictment. See, *Waffer v. State*, Tex.Cr.App., 500 S.W.2d 659. It was not error to admit evidence of the rape, and, once admitted, it was not error for the prosecutor to comment on such testimony during his jury argument. The third ground of error is overruled.

██ The fourth ground of error alleges that the trial court erred in denying appellant's motion for discovery of all reports and other materials relating to the alleged rape. Appellant states that this motion was denied because the court ruled prior to trial that the State would not be allowed to introduce any evidence of the rape at trial. Appellant asserts that he was denied a fair trial once evidence of the rape was admitted.

The motion for discovery requested:

"The name and address of any and all Doctors, pathologists, chemists or technicians, who took part in any examination of the body of J____ W____ V____ or of any particles, organs, or fluids removed therefrom."

The prosecutor informed the court that this information could not be inspected until it arrived from Washington. He also stated that it would not arrive until the rape case was set for trial.

Initially, we observe that the appellant, in his brief, complains that he was not allowed discovery of reports and all other materials relating to the alleged rape. The

motion for discovery, however, did not request this information. The pre-trial motion does not contain the same request as that urged on appeal.

The record also indicates that the State was not in possession of any reports, materials, or names of persons conducting the examination at the time the motion for discovery was made.

The appellant has failed to establish that the reports and other material relating to the rape existed at the time the motion for discovery was entered. See, *Spaulding v. State*, Tex.Cr.App., 505 S.W.2d 919. We overrule the fourth ground of error.

■ Ground of error number five contends that the trial court erred in permitting the State to introduce hearsay testimony of Joe Davis that he had been told by one Joseph Dutrey that Donald Smith had given Dutrey some of the money taken in the robbery. The portion of the record cited by the appellant to substantiate this contention, however, contains the testimony of F.B.I. agent Thomas. We have, nevertheless, examined the page of the record complained of in regard to appellant's claim. No hearsay testimony is contained thereon. Furthermore, the objection was sustained and no further relief was requested. The fifth ground of error is overruled.

■ Appellant's final argument urges that the trial court committed error by allowing the prosecutor to violate the "best evidence rule." Two State witnesses entered testimony concerning the serial numbers on the money taken during the bank robbery. Appellant claims that the "best evidence rule" was violated because the money was not introduced by the State.

We do not agree. One State witness, an employee of the bank, stated that she personally knew the serial numbers on the currency taken during the robbery. She then stated the numbers on the stolen money. Another witness for the State then testified in regard to the serial numbers on the currency recovered by the authorities. The numbers on the recovered currency matched those on the money taken in the robbery.

Both of these witnesses had first-hand knowledge of the serial numbers on the currency. It was not necessary for the State to introduce the actual money taken during the offense.

■ The "best evidence rule" pertains to writings or documents. One commentator has stated:

"The specific context in which it is generally agreed that best evidence principle is applicable today should be definitely stated and its limits clearly defined. The rule is: in proving the terms of a writing, where the terms are material, the original writing must be produced unless it is shown to be unavailable for some reason other than the serious fault of the proponent." McCormick on Evidence, Sec. 230, p. 560 (2nd Ed. 1972).

The rule requiring the "best evidence" has no applicability to the circumstances of the case at bar. The final ground of error is overruled.

The judgment in Cause No. 51,371 (Louis Albert Smith) is reversed and the cause is remanded.

The judgment in Cause No. 51,370 (Donald Elliot Smith) is affirmed.

DOUGLAS, Judge, concurring in part and dissenting in part.

The majority reverses the conviction of Louis Albert Smith on the ground that the confessions of the two should not have been admitted into evidence because the State did not refute his testimony that officers in Louisiana had beaten him and that he later confessed because of such alleged beatings. Neither appellant testified that the FBI, who took Louis Albert Smith's confession, or the Texas Ranger, who took Donald Elliot Smith's confession, beat them. Louis was arrested in New Orleans after his attorney called the FBI to surrender his client. A confession was not taken that day but several days later after his attorney called the FBI and asked that they take his

statement, apparently because Louis wanted to clear up his cases. The two appellants were being held for several other robberies which had been committed in Mississippi and Louisiana. When Louis was questioned by the prosecutor about his lawyer who had been hired by his family, he refused to testify several times on the basis of the Fifth Amendment. During his trial in federal court in New Orleans, he withdrew his claim of a forced confession. The officers who allegedly beat the appellants were neither described nor named.

After Donald Smith had been arrested he was with officers in the woods in Louisiana trying to find the money taken from a Mississippi robbery that he had hidden there when, without questioning, he told an FBI agent about the robbery in Lockhart. He alleged that the Louisiana officers beat him before the confession was reduced to writing. He does not contend that the FBI or Ranger Joe Davis of the Texas Department of Public Safety mistreated him in any way.

None of the officers who were available to testify were accused of mistreatment, only those who were unnamed and undescribed in the other state. The voluntariness of the confession was not made an issue before the jury. The FBI agents who saw both appellants after the time of the alleged beatings saw no bruises or marks on either of them.

At the only hearing which was held before the judge when the confession of Donald was offered counsel stated:

"For the limited purpose of the hearing only, without making any admission as to the truth of any matters stated on the statement, we have no objection to its admission."

The only purpose for the hearing before the judge was to get a determination of the voluntariness of the confession. However, assuming that enough evidence was not introduced by the State (there is much more than is set out herein) to overcome the testimony of appellants, and assuming the agreement to admit the confession is not enough to foreclose the issue, there was overwhelming evidence to make the admission of the confession harmless error beyond a reasonable doubt.

The indictments alleged that the money in the robbery was taken from Helen Franks. She, at the trial, identified both the appellants as the robbers. There was no lineup or picture display before the trial. She testified that the robbers were in the bank for some 25 or 26 minutes and it was well lighted and she had many opportunities to look at them.

The record reflects that at approximately 8:15 a. m. on the day in question appellants took Eddie Rangel, a custodian at the bank, with a gun at his head into the lobby and one of them said, "This is a holdup." Donald shot at the camera with a shotgun. Louis moved all of the bookkeepers and tellers and other bank personnel into the lobby and threatened to kill everyone there and put the shotgun to Mr. Clark's head and asked, "Who can get me the money out of the other vault?" He got the cashier and another woman and made them open the vault. He had them load the money in bags. He made one of the women lie down on the floor in the vault while he raped the other woman just next to her. He hit the woman he had raped on the head with a gun and closed the door to the inner vault. Then both appellants locked all of the employees of the bank in the vault, shot the lock off the back door taking some $86,000 and left.

Helen Franks was vice president and cashier of the Lockhart State Bank. In addition to the above, she stated that while they were in the inner vault Louis Smith made her and the other woman who was raped attempt to open the inner vault which had a dual combination which took two to open. The other woman had the first combination and Mrs. Franks had the other combination. Both tried their combinations but the door did not open. He cursed them. They tried a second time and it did not open. He threatened to kill them. The other woman said, "Please, sir, I got to have my glasses." He let her go outside the vault to get her glasses. When she

returned, and on the third try, the door opened. He handed them a yellow canvas bag to put the money in. He held his shotgun on them and Mrs. Franks could see a pistol in his belt. The other woman held the bag and Mrs. Franks loaded it with money. He found the drive-in cash boxes in the vault and put the cash from them in the sack. He then walked over and loaded some $400 in halves and quarters. He then set the bag by the door and asked what was in the next vault. He was not interested in it when he found that it contained abstracts.

The other woman in the vault had on a pants suit. He pulled her clothes down and said, "I want to see what a white Honky looks like." He pulled her blouse open and buttons fell all over the floor. He pulled her bra down below her breasts and said, "On the floor, bitch!" She got on the floor "and he proceeded to rape Mrs. _____." While he was accomplishing this, he held the pistol to her head and when he finished he hit her on the head with the gun. She heard the two robbers putting the other employees in the outer vault and she heard three or possibly four shots.

Ida Piwetz, assistant vice president of the bank, testified that there were fourteen or fifteen employees of the bank present at the time of the robbery by the appellants. She identified appellants in the courtroom and described what kind of clothes each was wearing during the robbery. Donald Smith made the employees lie down on the floor. She heard the two women having trouble opening the vault and she next saw Louis Smith come out of the vault. He ordered all the other employees into the vault. Donald Smith went back into the teller area. As Louis was rounding up the group toward the vault, he grabbed Mrs. Piwetz's left breast and played around with it. After they were all locked in the vault, they heard shots and the back door was shot out. These witnesses had more time than they wanted to become acquainted with appellants.

FBI Agent King recovered eleven hundred and eighty-five dollars from a safe deposit box of Donald Smith's wife in New Orleans which was sent to FBI Agent Bruce Yarbrough in San Antonio. Agent Yarbrough testified that he investigated the bank robbery in Lockhart. Without detailing all of his testimony, he testified that he received the money that had been recovered by the agent in New Orleans. He looked through the money and found a $10.00 bill with the serial number K51590179A and produced it in court. Mrs. Franks was secretary of the board of directors of the bank and she testified that she paid the directors with new money from a bundle with the bills numbered serially with the largest number on top. The last director to be paid was with bill number K51590180A and the rest of the money in that bundle of new series of bills was in the cash vault on the day of the robbery. Therefore, one of the bills later found in the safe deposit box in New Orleans was in the vault when she was robbed.

Without considering the confession of either appellant, there is more than enough evidence to convict both appellants. Even if the confessions were not admissible under the proof offered, their introduction was harmless beyond a reasonable doubt. It is hard to conceive that a jury would not convict on this evidence. In *Harrington v. California*, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969), in an opinion by Mr. Justice Douglas, the Supreme Court of the United States held that the introduction of the confession of co-defendants who did not testify and who were not subject to cross-examination was harmless error beyond a reasonable doubt because there was strong evidence against Harrington. He wrote:

"We, of course, do not know the jurors who sat. Our judgment must be based on our own reading of the record and what seems to us to have been the probable impact of the two confessions on the minds of an average jury."

Under *Harrington* the introduction of each co-defendant's confession against the other could be harmless error.

The majority's holding that the introduction of a confession, if it has not been

shown that it was legally taken, can never be harmless error and violates due process is contrary to the decision of the Supreme Court of the United States. *Milton v. Wainwright*, 407 U.S. 371, 92 S.Ct. 2174, 33 L.Ed.2d 1 (1972), held that error, if any, in admission of a post indictment, pre-trial confession obtained by a police officer who posed as a fellow prisoner confined in the cell with Milton was harmless beyond a reasonable doubt in view of the overwhelming evidence of his guilt. Chief Justice Burger, who wrote the opinion, cited *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), which is relied upon by the majority. He did not hold that this violated due process. *Chapman* was reversed on an argument that he failed to testify. He also cited *Harrington v. California*, supra, to support his holding of harmless error. To hold that it can never be harmless error to introduce a confession without fully proving testimony of a defendant about coercion would be to pass on cases before they get to the Court. That language is not necessary to the majority holding and is dictum. A defendant could claim that he was beaten by officers in another state and the State could bring in ten or more to refute his testimony. The accused could then testify that none of those present beat him but others did. Under the majority opinion, the State would have to bring in all of the officers who were on the force at the time of the alleged beatings.

Because there was no proper objection and because error, if any, was harmless beyond a reasonable doubt, both judgments should be affirmed.

ROBERTS, Judge, concurring in part and dissenting in part.

Our holdings in *Farr v. State*, 519 S.W.2d 876 (Tex.Cr.App.1975), and *Sherman v. State*, 532 S.W.2d 634 (Tex.Cr.App.1976), stand for the proposition that where an accused alleges that his confession was coerced, someone who was present when the alleged coercive acts took place must take the stand and refute the allegations of the accused; that if none who were present are called by the State, their absence must be explained; and that if neither of the above occurs, the allegedly coerced confession is inadmissible as a matter of law.

In the cases at bar, FBI agent Thomas did not testify that he was present when the Louisiana officers allegedly beat appellant Donald Elliot Smith. He was not in the car when this was alleged to have occurred, nor was he at the jail where subsequent beatings were alleged to have occurred. The Louisiana officers who allegedly beat Donald Elliot Smith were not called to refute this appellant's allegations, nor was their absence explained. Consequently, Donald Elliot Smith's confession was inadmissible as a matter of law.

There is no difference in the fact situation between the two appellants' cases as far as fulfilling the requirements of *Farr* and *Sherman*. Therefore, I dissent to the affirmance of Donald Elliot Smith's conviction and concur in the reversal of Louis Albert Smith's conviction only because I feel both convictions should be reversed. I do not imply by my concurrence that I am part and parcel of the majority's illogical decision today.

The appellants were tried jointly. Both appellants' primary contention was that the trial court abused its discretion in admitting their confessions into evidence because such confessions were shown to be involuntarily given and such showing was insufficiently rebutted by the State. *Farr* and *Sherman* dictate that this ground of error be sustained in both causes and that they both be reversed.

The issue is whether the confessions should have been admitted into evidence by the trial court.[1] A lengthy *Jackson v. Den-*

---

1. In this regard I note that the jury was instructed not to consider the confessions unless they were found to be voluntary beyond a reasonable doubt. This instruction should not have been given, since there was insufficient evidence to support it: The only testimony on the issue of voluntariness came from the law enforcement agents who took the confessions and who were not alleged to have engaged in any of the alleged acts of coercion. *See, Sher-*

no[2] hearing was held, during which each appellant took the stand for the limited purpose of challenging the voluntariness of his confession. *Henson v. State*, 452 S.W.2d 448 (Tex.Cr.App.1970).

Appellant Louis Albert Smith testified to numerous acts of physical abuse and coercion that he was allegedly subjected to by members of the New Orleans city police from the time he was initially apprehended in New Orleans and put in the New Orleans House of Detention until he was visited by the FBI agents who ultimately took his alleged voluntary confession. He further testified that he was told by the New Orleans police officers that he would have to plead guilty and that he was going to keep getting the "same treatment" until he did.

The State called FBI agents P. M. King and B. S. Thomas. They testified that the appellant Louis Albert Smith appeared to be proceeding voluntarily in the confessions he gave them on June 5th and June 6th, 1973. However, they testified that they had no personal knowledge of what, if anything, was done to the appellant between the date of his arrest on May 29, 1973, and June 5, 1973, the date the first statement was taken from the appellant.

Appellant Louis Albert Smith also testified to alleged acts of physical coercion by the New Orleans police during the period between the statements he gave the FBI agents on June 5, 1973, and June 6, 1973, respectively.

None of the New Orleans police officers were called to refute appellant's testimony concerning the alleged acts of physical coercion. Nor was their absence explained. No one present at the New Orleans House of Detention between May 29, 1973, and June 6, 1973, testified in rebuttal to appellant's claim of physical coercion.

Appellant Donald Elliot Smith testified that he was arrested near Slidell, Louisiana by officers of the Saint Tammany Parrish, Louisiana, Sheriff's Department. After his arrest, Smith was taken to the Saint Tammany Parrish jail. After spending approximately two days there, he was sent to Jackson, Mississippi, where he was interviewed by Texas Ranger Joe Davis. Appellant gave Ranger Davis a written confession at that time.

Appellant Donald Elliot Smith also testified to numerous acts of physical violence and coercion allegedly perpetrated upon him by officers of the Saint Tammany Sheriff's Department while being held at the jail. These acts of coercion allegedly occurred from the time of his arrest until the time he was transported to Jackson, Mississippi, where he met with Ranger Davis. Specifically, appellant alleged that in the automobile on the way to the jail the officers riding in the automobile with him hit him, kicked him and bent his fingers back while telling him, "You're going to talk; we're going to get everything from you; we're going to know everything you did; you're going to tell us everything."

man v. State, supra, and *Farr v. State, supra*. The appellants did not testify, nor did they put before the jury any evidence to raise the issue of the voluntariness of their confessions.

Thus, there was *no* evidence of probative value before the jury from which it could find that the confessions were or were not voluntary. Consequently, the case is in the same position as if no charge had been given, and this Court is "limited to the admissibility of the confession(s) as a matter of law." *Morris v. State*, 488 S.W.2d 768, 772 (Tex.Cr.App.1973). Accord, *Taylor v. State*, 498 S.W.2d 346 (Tex. Cr.App.1973).

However, I emphasize that this reasoning does not apply in those situations where the trial court exercises its discretion under Art.

38.22, Vernon's Ann.C.C.P., and admits evidence before the jury on the fact issue of voluntariness. In such a case the accused does not waive the right to have the jury's determination on voluntariness supported by sufficient evidence simply because he fails to take the stand and testify on the voluntariness of his confession. The failure of the accused to testify before the jury on the issue of voluntariness may be based upon wholly valid reasons other than the fact that he has no evidence to present. See, *Jackson v. Denno*, 378 U.S. 368, 389, n. 16, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964).

**2.** 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964).

Agent Thomas did not testify that he was in the automobile when this occurred. No one present in the automobile at that time was called. The absence of such witnesses was not explained. Donald Elliot Smith alleged that he was also beaten at the jail. Agent Thomas did not testify that he was at the jail when this occurred. No one from the jail was called, nor was their absence explained. If we accept appellant Donald Elliot Smith's allegations as true, and we must under *Farr, supra*, and *Sherman, supra*, it is easy to see why FBI agent Thomas was of the opinion that appellant Donald Elliot Smith's first oral confession to him was at the appellant's invitation and on appellant's initiative and why he also felt that the appellant seemed eager to talk at the subsequent interview.

Ranger Davis testified that he warned appellant Donald Elliot Smith of his constitutional rights and that after doing so appellant indicated that he still wanted to make a statement. Davis further testified that appellant appeared to be proceeding voluntarily, but had no knowledge of what, if anything, was done to the appellant by other law enforcement officers connected with this case.

The State also called Ed Brown and Ernest Gallat, deputy sheriffs from Caldwell County, Texas. They testified that they accompanied Ranger Davis to Jackson, Mississippi, to take the confession of appellant Donald Elliot Smith. They corroborated Ranger Davis' testimony that appellant had been warned of his constitutional rights and appeared to be proceeding voluntarily. However, they also testified that they lacked personal knowledge of what, if anything, was done to the appellant by the law enforcement officers who held the appellant prior to their meeting with him in Jackson, Mississippi.

None of the officers of the Saint Tammany Sheriff's Department who allegedly physically coerced appellant Donald Elliot Smith into ultimately giving his confession, nor anyone present at the Saint Tammany Parrish jail while appellant was being held there, were called to testify in rebuttal to appellant Donald Elliot Smith's allegations. Nor was their absence explained.

In *Farr, supra*, the interrogating officer testified that he read the defendant his rights, which were willingly waived, and then proceeded to take his confession. The officer further testified that he observed the defendant's demeanor and the defendant did not appear agitated. However, the officer admitted that he had no personal knowledge of anything which took place before the defendant was brought to the station for interrogation. This left uncontradicted the defendant's prior allegations of physical coercion and threats.

We held in *Farr* that: "It has long been the law of this State that whenever the testimony of the accused as to alleged coercive acts is undisputed, then as a matter of law the confession is inadmissible." *Id.*, at 880. We further stated that: "Had the police officers testified and denied any coercion or *someone present* at the incident denied any use of force, thus contradicting appellant's testimony, the trial judge as trier of fact could have determined the confession to be voluntary." *Id.*, n. 4. (Emphasis added).

In *Sherman, supra*, the defendant testified that he signed his confession only because one of the interrogating officers had told him he would receive the death penalty if he didn't. This officer was not called to refute such allegations and his absence was wholly unexplained. Other officers who did testify could not deny the defendant's allegations because there was no showing that they were present when the statements were allegedly made.

We followed *Farr*, and held that the State failed to fulfill its burden of showing that the defendant's confession was voluntary. However, we further stated that:

"It should be understood that if the State had presented a reasonable explanation of Cochran's (the interrogating officer) failure to testify, such as his death or their inability to locate him, the trial court would have been free to disbelieve appellant's testimony. When the State neither placed Cochran on the stand nor

**18**

explained his absence, the obvious inference is that he did not testify because he could not deny appellant's allegations. (Citations) No such inference could be made, however, if there were an explanation of the absence of the witness." *Sherman*, at 636, n. 2.

In the cases at bar, the State has not fulfilled its burden of showing that either of appellants' confessions were voluntarily given. Consequently, the trial court abused its discretion in admitting them into evidence.

Although I would reverse both appellants' convictions because of this, I am not unmindful of other evidence in the record which would support their convictions notwithstanding the erroneous admission of their confessions. However, the Supreme Court of the United States has mandated that:

> "It is now axiomatic that a defendant in a criminal case is deprived of due process of law if his conviction is founded, in whole or in part, upon an involuntary confession, without regard for the truth or falsity of the confession, (citation), and even though there is ample evidence aside from the confession to support the conviction. (Citations)." *Jackson, supra,* 378 U.S. at 376, 84 S.Ct. at 1780.

This rule has been followed by lower federal courts and courts of our sister states on occasions too numerous for citation. I can only conclude that it must be regarded as a rule so basic to a fair trial that its infraction can never be treated as harmless error.[3] *Chapman v. California,* 386 U.S. 18, 23, n. 8, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *Payne v. Arkansas,* 356 U.S. 560, 568, 78 S.Ct. 844, 2 L.Ed.2d 975 (1958).

The judgments of the trial court should both be reversed and both causes should be remanded.

---

**3.** This conclusion only applies, however, to the type of confession we are dealing with in the case at bar—the "coerced" confession. I note that there is a difference between the genus of unlawfully obtained confessions and the species of unlawfully "coerced" confessions. *Smith v. Estelle,* 527 F.2d 430, 431 (5th Cir.

1976). While the former may be subjected to the harmless error rule, *Milton v. Wainwright,* 407 U.S. 371, 92 S.Ct. 2174, 33 L.Ed.2d 1 (1972), the latter may not. *Jackson, supra; Chapman, supra; Payne, supra; Smith* (and cases there cited), *supra.*