Dan Negrete ORTEGA, Appellant,

v.

The STATE of Texas, State.

No. 2–81–301–CR.

Court of Appeals of Texas,
Fort Worth.

March 23, 1983.
Rehearing Denied May 25, 1983.

See also Tex.App., 644 S.W.2d 912.

Lee Ann Dauphinot, Fort Worth, for appellant.

Tim Curry, Dist. Atty., Victoria Fay Prescott, Asst. Dist. Atty., Fort Worth, for appellee.

Before FENDER, C.J., and BURDOCK, J.

## OPINION

FENDER, Chief Justice.

Appellant, Danny Negrete Ortega, was convicted by a jury of burglary of a habitation. Punishment was assessed at thirty-five years.

We affirm.

Ortega raises ten grounds of error in this appeal. They are as follows:

(1) The Court erred in denying Appellant's motion to suppress the tainted in-court identification.

(2) The Court erred in denying Appellant's motion to suppress the impermissibly suggestive pre-trial identification.

(3) The pre-trial identification procedure viewed from the totality of the circumstances, was so unnecessarily suggestive and conducive to irreparable mistaken identification, as to amount to a denial of due process.

(4) The Court erred in allowing the State to impeach its own witness over Defendant's timely objection.

(5) The Court erred in overruling Appellant's objection to the State's argument that the jury should consider a prior conviction as evidence of Appellant's guilt.

(6) The evidence was insufficient to sustain a conviction.

(7) The Court erred in refusing to suppress the fruit of an illegal search and seizure.

(8) The Court erred when Defendant was denied compulsory process when the trial court denied the subpoena for the police officer.

(9) The Trial Court committed reversible error when it denied Defendant's motion to discover police dispatcher's recordings.

(10) Mandatory Supervision constituted a denial of Defendant's right to due process, equal protection, and freedom from an unlawful restraint.

On September 25, 1980, a seventy-two year old woman was preparing lunch when she heard someone enter her home through a screen door. The intruder entered the kitchen with a brown-handled pocket knife and demanded all of the victim's money. The intruder took a dollar and change left on the table for the milkman and then went through her coin purse for more change.

At this point the intruder closed the outside doors and wheeled the victim into the bedroom (The victim is an amputee and consequently is confined to a wheelchair). He told her not to scream or he would hurt her while holding the knife with the blade open. He then made her take her clothes off, laid her on the bed, and raped her. After the rape, the intruder wheeled the victim back into the kitchen. He sat down at the table and had some cookies and Kool-Aid. He then smoked a cigarette which came from a green and white cigarette package.

As he left, the victim watched him walk away. She then called her daughter-in-law, who contacted police.

The police officer who answered the call got a description of the intruder from the victim. She described him as a Mexican male in his early twenties, with medium length black hair and a thin mustache. He was five foot six, 150 pounds, and was wearing a black fishnet shirt, black slacks, and black shoes.

As the officer was waiting at a stop sign some six to ten blocks from the victim's home, an automobile whose driver's shirt, hair, and mustache matched the victim's description passed directly in front of him. As the car passed, the driver was looking at the officer and sliding down the car seat. When the officer pulled out behind the car, it accelerated. The driver would not pull over when the officer turned on his emergency lights. The other two occupants of the car repeatedly turned to look at the officer and there was movement as if to hide something under the seat.

When the car did pull over, the driver stepped from the car. The officer noticed that he matched the description given by the victim and placed him under arrest. The officer identified Ortega at trial as the driver he arrested.

In the search of Ortega incident to the arrest, the officer found a brown bone-handled knife, a dollar bill and some change, and a green and white Salem cigarette package.

Ortega's first three grounds of error assert that the victim's in-court identification was tainted by improper pre-trial identification procedures. He contends that the police suggested an identification of him to the victim.

The line-up Ortega complains of took place on September 28, 1980. The record reflects that the police informed the victim that they felt they had apprehended her assailant. However, they did not tell her he was definitely in the line-up or his name. She did not have any trouble picking Ortega as the one who assaulted her, and even remembered what position Ortega occupied in the line-up. She testified that she picked Ortega from the line-up because he was the man who raped her, and she was positive that her identification was correct. All the line-up participants were "spanish looking", had dark hair, and were of the same build. She testified that her assailant had on white cover-alls at the line-up, and that she saw no black clothing on him. She testified that after the line-up, she went to a detec-

tive's office where she saw some pictures of Ortega. She never saw pictures before the line-up. She also testified that she did not mark the appropriate box on the line-up sheet, but that she did sign it.

Ortega complains that he had no attorney, that the police informed the victim before the line-up that they thought they had her assailant, that the detective marked the correct box on the line-up sheet, that she saw only a photo of Ortega, and the photo was not preserved.

■ Ortega has not shown that he was entitled to counsel at the line-up. The record does not show that Ortega had been formally charged with the commission of an offense prior to the line-up. *Rudd v. State*, 616 S.W.2d 623, 624 (Tex.Cr.App.1981). The information given to the victim that the police thought they had her assailant prior to the line-up is of no consequence as it is merely what anyone would assume upon viewing a line-up. The fact that the detective marked the box on the line-up sheet does not affect the validity of the identification here, given the facts recited above. Further, the photograph does not taint the identification as it was not seen until *after* the line-up.

■ However, assuming, arguendo, that the line-up could be considered impermissibly suggestive, still no error is shown. The Court of Criminal Appeals recently said in *Jackson v. State*, 628 S.W.2d 446, 448 (Tex. Cr.App.1982):

A defendant who contends on appeal that a trial court erred in allowing an in court identification of him by a complaining witness has a difficult and heavy burden to sustain, for unless it is shown by clear and convincing evidence that a complaining witness' in court identification of a defendant as the assailant was tainted by improper pre-trial identification procedures and confrontations, the in court identification is always admissible.

The test for determining the independence of the in-court identification is set out in *Turner v. State*, 614 S.W.2d 144, 146 (Tex.Cr.App.1981):

(1) the prior opportunity to observe the alleged criminal act

(2) the existence of any discrepancy between any pre-lineup description and the defendant's actual description

(3) any identification prior to lineup of another person

(4) the identification by picture of the defendant prior to the lineup

(5) failure to identify the defendant on a prior occasion, and

(6) the lapse of time between the alleged act and the lineup identification.

The record in this case makes it clear that the in-court identification was independent of the line-up. Ortega spent forty-five minutes in the victim's home, fifteen or twenty of which were spent raping her. There was ample light to see and Ortega did nothing to hide his features from her. Her description to the officers of her assailant was quite similar to Ortega's actual description except for being ten pounds off on his weight. The police officer initially stopped Ortega and ultimately arrested Ortega because he matched the description she gave. The picture of Ortega was not seen by the victim until after the line-up and the line-up followed the offense by only four days.

The evidence is clearly sufficient to sustain the trial court's determination that the victim's in-court identification was independent of any pre-trial procedures. Therefore, even if there were irregularities in the line-up, it was not improper to permit the in-court identification of Ortega at trial.

■ Ortega also complains that the pretrial identification amounted to a denial of due process. Under the due process analysis, even if pre-trial identification procedures are found to be suggestive and unnecessary, the admission of identification testimony at trial does not violate due process as long as the identification possesses sufficient aspects of reliability. *Garza v. State*, 633 S.W.2d 508, 513 (Tex.Cr.App.1982). The record here shows that such aspects of reliability were amply present. Grounds of error one, two, and three are overruled.

In his fourth ground of error, Ortega asserts that part of the State's examination of the victim during a pre-trial suppression hearing constituted improper impeachment.

The record reveals that the victim failed to remember marking the line-up sheet or signing her name to it. However, she did identify her signature on the line-up sheet when questioned about it.

█ As the complained of examination was before the court and not before a jury, no reversible error is presented. *Williams v. State*, 481 S.W.2d 417 (Tex.Cr.App.1972). Also, the fact that the victim did sign the line-up sheet is shown by the victim's identification of her signature on it. The improper admission of evidence does not constitute reversible error when the same facts are shown by the admission of other testimony to which no objection is made. *Cain v. State*, 549 S.W.2d 707 (Tex.Cr.App.1977). Ground of error number four is overruled.

Ortega's fifth ground of error asserts that the State's jury argument was improper as it asked the jury to consider a prior conviction as evidence of guilt.

The record reveals the following jury argument by the State:

BY MR. CONNER:

This man, ladies and gentlemen, Mr. Ortega, and the first thing that he says when she says, "Don't hurt me," he says, "I want your money." What little bitty bit of money that she's got—"I want your money," from an old lady.

Sound familiar? That's robbery, ladies and gentlemen—the taking of property of another without consent by force. That's not theft exactly. That's robbery.

Sound familiar?

Mr. Ortega has been convicted of robbery before.

MR. CASEY: Your Honor, we object to that as being contrary to the Court's Charge and the law; the Jury has been instructed by the Court not to consider his prior convictions as any evidence of guilt in this case. And the prosecutor has already directed countered to the Court's Charge and we object to it.

THE COURT: Overruled.

MR. CASEY: Note our exception.

MR. CONNER: Ladies and gentlemen, don't be fooled by this grand admission that—"I'm a robber and I want you all to know about it ahead of time."

MR. CASEY: We object to the admission that he's a robber. He admitted that he had been convicted of the offense of robbery.

THE COURT: Overruled.

MR. CASEY: Note our exception.

MR. CONNER: We can banter over words all day long, but this admission is nothing that necessarily shows the goodness of anyone's heart. It simply means that we might as well get it out first before it's brought out anyway.

There is no goodness necessarily in that.

And consider this, ladies and gentlemen: the law says you may take into consideration past convictions as to the credibility of the witness. So in saying hey, wait a second, you're entitled to take a look at the person who is telling you a story and determine whether you think he's telling the truth or not.

█ At the outset, we note that it is not per se improper to make reference in jury argument to a prior conviction of the defendant. When the admission of an extraneous offense is proper, it is not error for the prosecution to comment on this matter in jury argument. *Smith v. State*, 547 S.W.2d 6, 11 (Tex.Cr.App.1977).

In the instant case, Ortega himself introduced the prior conviction into evidence—without limiting the purpose for which it could be considered. In *Bacon v. State*, 500 S.W.2d 512, 514 (Tex.Cr.App.1973), the Court of Criminal Appeals held that it was not error for a prosecutor in jury argument to refer to polygraph examinations when the defendant first raised the subject while testifying in his own behalf. While usually not proper evidence or the proper subject of argument in a criminal trial, it was not error for the prosecutor to refer to what was already in evidence.

In *Bush v. State,* 642 S.W.2d 787, 789 (Tex.Cr.App.1982), the Court of Criminal Appeals held that where the defense first offers testimony relating to prior convictions for purposes other than impeachment, the failure of the court to give a limiting jury instruction would not be error.

■ In the instant case, the court did give a limiting instruction in the charge to the jury that the evidence of the prior conviction for robbery was limited solely to the credibility of Ortega as a witness. The prosecutor also limited the purpose for which the conviction could be used by the jury to credibility in the complained of argument. We do not think that the jury was misled by this argument into thinking that evidence of the prior conviction could be used for any other purpose.

Ortega cites *United States v. Garber,* 471 F.2d 212 (5th Cir.1972) and *Sanchez v. State,* 591 S.W.2d 500 (Tex.Cr.App.1979) in support of his contention that this jury argument is improper. A reading of those cases will show that there was a direct attempt to urge the jury to consider the prior convictions as evidence of guilt in the offense being prosecuted. As stated above, that is not the situation here.

Lastly, under the applicable test for jury argument, the argument must be extreme, manifestly improper, or inject new or harmful facts into the case. *Duffy v. State,* 567 S.W.2d 197 (Tex.Cr.App.1978). The instant argument cannot reasonably be considered "extreme". While it may be argued that it impliedly asked the jury to give improper consideration to the prior conviction, such an implication is not "manifest". The argument does not inject any new facts to this jury. Thus, this argument, even if it might be error, is certainly not reversible. Ortega's fifth ground of error is overruled.

■ Ortega's sixth ground of error attacks the sufficiency of the evidence on the ground that the victim's identification of Ortega was tainted. As we have found the identification sufficient, there is no merit to this contention. Ground of error six is overruled.

■ Ortega's seventh ground of error asserts that the police officer who arrested and searched him lacked probable cause to do so.

The record shows the officer had gotten a full description of the victim's assailant from the victim. He testified that his attention was drawn to the driver of the automobile that passed directly in front of him because his shirt, hair, and mustache matched the description. Further, the actions of the automobile and its occupants upon seeing the police car were quite suspicious. We hold that the facts and circumstances recited by the officer were sufficient to justify his initial stop of Ortega's car. *Armstrong v. State,* 550 S.W.2d 25 (Tex.Cr.App.1977). Ortega matched the description given by the victim. As Ortega was in a car, the procuring of a warrant was impractical. *Hooper v. State,* 516 S.W.2d 941 (Tex.Cr.App.1974). The officer had probable cause to stop and then arrest Ortega. The subsequent search was valid as incident to the arrest. *Chimel v. California,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969); *Laws v. State,* 549 S.W.2d 738 (Tex.Cr.App.1977). Ground of error seven is overruled.

Ortega's eighth ground of error asserts that he was denied the right to compulsory process by the trial court's denial of a subpoena for certain police officers.

■ To avail himself of his right to compulsory process for witnesses a defendant must show the court that the testimony of those witnesses will be material. In order to show materiality, a defendant must ask the court to subpoena the desired witnesses accompanied by a sworn statement saying what the witnesses would have testified to. *Hardin v. State,* 471 S.W.2d 60, 62 (Tex.Cr.App.1971). The record before us contains certified copies of two subpoenas (one for each of the two officers the defendant wished to have testify) and a motion for continuance for an absent witness. There is nothing in the record to indicate what action, if any, the trial court took on the two subpoenas. Therefore, this ground

does not involve a denial of a defense request for subpoenas, since there is no record of any such denial, but only a denial of the motion for continuance.

█ The motion was sworn to by Ortega himself, as required by V.A.C.C.P. art. 29.-08, but it fails to specify the facts which are expected to be proved by the witnesses or that they were probably true as required by V.A.C.C.P. art. 29.06(6). Without such facts, there is no showing of materiality and no error in denying the motion for continuance. Ground of error eight is overruled.

Ground of error nine contends that the trial court erred when it denied Ortega's motion to inspect police dispatcher recordings.

The record reflects that in the trial court's ruling on Ortega's motion to inspect the evidence, the following took place:

THE COURT:

Does the police department tape recording show some res gestae communications or something?

MR. WALLACE [The Prosecutor]: Not that I know of, Your Honor. And I believe from what Mr. Casey learned—and I have to check that out to see if that is correct—all of the dispatcher's recordings are destroyed after thirty days. If they have shown something, I don't believe that we're going to be able to get it for him.

THE COURT: That is denied.

At no time did Ortega attempt to make a bill of exceptions to show that the prosecutor's statement was incorrect.

█ A trial court does not err when it refuses to require the State to produce a nonexistent item. Further, a defendant seeking to discover certain evidence must show that the evidence is material and in possession of the State. *Turpin v. State,* 606 S.W.2d 907 (Tex.Cr.App.1980). No such showing was made here. Ground of error nine is overruled.

Ground of error ten asserts that Ortega was on Mandatory Supervision at the time of his arrest and that this constituted a denial of his right to due process, equal protection, and freedom from unlawful restraint. Such a contention is wholly without support in this record. Ground of error ten is overruled.

The judgment is affirmed.