Helen PRINE, Appellant,

v.

The STATE of Texas, Appellee.

No. 48336.

Court of Criminal Appeals of Texas.

May 29, 1974.

Mike V. Gonsalez, Del Rio, for appellant.

John F. Pettit, Dist. Atty., Del Rio, and Jim D. Vollers, State's Atty., Austin, for the State.

### OPINION

ODOM, Judge.

Appellant was convicted as accessory to murder; punishment is two years.

At the outset appellant challenges the sufficiency of the evidence, contending no offense is shown, and further, that the testimony of the accomplice witness Timothy Don Littrell is not corroborated.

Article 77, Vernon's Ann.P.C., provides in part:

"An accessory is one who, knowing that an offense has been committed, conceals the offender, or gives him any other aid in order that he may evade an arrest or trial or the execution of his sentence."

It is clear from the record that Littrell committed the offense of murder by killing appellant's young child, and that appellant knew of the crime when, at the hospital, she was told the child was dead. The crucial question is whether appellant made herself an accessory by some act or statement after the murder and her knowledge of the murder.

■ Although it is true that the fact that one "fails to inform on a person he knows to have committed a crime, or conceals his knowledge that a crime has been committed does not make him an accessory," 16 Tex.Jur.2d 202, Criminal Law, Sec. 83; Curry v. State, Tex.Cr.App., 468 S. W.2d 455; Wade v. State, Tex.Cr.App., 367 S.W.2d 337; it is also true that the giving of false information can be such an act as to render one an accessory. See Judge Morrison's Commentary, 1 V.A.P.C., p. XIII; Gottschalk v. State, 157 Tex.Cr. R. 276, 248 S.W.2d 473; Littles v. State, 111 Tex.Cr.R. 500, 14 S.W.2d 853; and this is so even if the person to whom the false information is given is not a peace officer, if done for the purpose of aiding the principal to evade arrest or trial, McGoodwin, v. State, 134 Tex.Cr.R. 231, 115 S.W.2d 634.

■ The testimony of the accomplice witness Littrell supplies this element of the offense. He testified that appellant, at the hospital, after she was told the child was dead and therefore knew Littrell had murdered the child, told Dr. Dyke and the hospital commander that the child had fallen. This statement of how the child received the injuries that resulted in its death would be sufficient to render appellant an accessory to the murder. The sole issue with respect to the sufficiency of the evidence is whether the testimony of Littrell is corroborated on this essential point. Art. 38.-14, Vernon's Ann.C.C.P.

■ The single bit of evidence in the record which could supply the needed corroboration is the following statement contained in State's Exhibit No. 5, a narrative summary made by Dr. Dyke, one of the persons to whom the statement was allegedly made, on October 26, 1970, the day after the child's death:

"According to the patient's mother [appellant], her son fell from two steps while playing in front of his home at approximately 2040 hours. About 5 minutes later the patient [deceased] allegedly fell again from a high table and lay motionless—he then reportedly vomited and aspirated."

■ It will be observed that the corroborative evidence does not state *when* appellant gave the false information. It might be contended that this would render the evidence insufficient since, as stated earlier,

one is made an accessory only by some act committed after knowledge of the offense. We find such argument without merit on these facts because, although failure to disclose a crime or concealing one's knowledge of a crime is not alone sufficient to render one an accessory, here, even if appellant gave the false information before she knew of the child's death, and after obtaining knowledge was silent, the silence would not be *mere* silence, but would be taken as a continued affirmation of the previously given false information, which information was unquestionably given with knowledge of the aggravated assault upon the child, and would render her an accessory to the person regardless of when the statement was made to Dr. Dyke. In view of the shortness of the period of time at the hospital involved,[1] whether the statement rendering appellant an accessory was made before or after the moment death was announced can make no difference in the results here reached: if made after, the statement rendered appellant an accessory to murder; if made before, the silence following death was no mere silence, but a silence filled with false assertions which, by hanging in the air unrenounced following the child's death, made her an accessory to its murder.

The accomplice was corroborated; the evidence, sufficient.

Next appellant contends State's Exhibits 3, 4 and 5 were improperly admitted into evidence. The State maintains they were admissible under Article 3737e, Vernon's Ann.Civ.St., in that they were hospital medical records of the deceased child. Said article provides in part:

"Section 1. A memorandum or record of an act, event or condition shall, insofar as relevant, be competent evidence of the occurrence of the act or event or the existence of the condition if the judge finds that:

"(a) It was made in the regular course of business;

"(b) It was the regular course of that business for an employee or representative of such business with personal knowledge of such act, event or condition to make such memorandum or record or to transmit information thereof to be included in such memorandum or record;

"(c) It was made at or near the time of the act, event or condition or reasonably soon thereafter.

\* \* \* \* \* \*

"Sec. 2. The identity and mode of preparation of the memorandum or record in accordance with the provisions of paragraph one (1) may be proved by the testimony of the entrant, custodian or other qualified witness even though he may not have personal knowledge as to the various items or contents of such memorandum or record."

■ Lt. Griffith testified that he was custodian of the records in question. He further testified as to the satisfaction of each of the requisites to admission in Article 3737e, Sec. 1, supra, with respect to Exhibits 4 and 5. As to Exhibit 3, however, Griffith testified that it was not on a regular form, was not signed or initialed by anyone, and therefore he was unable to testify that it was made in the regular course of business, or that it was the regular course of business for such a note to be made. Accordingly, Exhibits 4 and 5 were admissible, Roddy v. State, Tex.Cr.App., 494 S.W.2d 174; Williams v. State, Tex. Cr.App., 492 S.W.2d 496; Exhibit 3, however, should have been excluded. Nevertheless, the error was harmless because the information contained in Exhibit 3 is also to be found in Exhibit 5.

■ It will be observed, however, that Article 3737e, supra, only permits introduc-

---

1. Forty minutes after arrival at the emergency room resuscitative attempts upon the child were terminated.

tion of qualified records *insofar as relevant.* Appellant objected at trial and contends in brief that the exhibits, by containing matter relating to the diagnosis and condition of the deceased, upon admission injected material inflammatory and prejudicial to the appellant and not relevant to any issue in the case. Although portions of the diagnosis and description of the condition of the child may be suggestive of mistreatment at times prior to the murder, and if so should have been excluded as not relevant upon proper objection, other portions of the diagnosis and description of the child were clearly relevant since at issue in the trial of an accessory are both the commission of the principal offense and the accused's knowledge thereof. Although appellant's objection pointed specifically to those parts of the exhibits containing the diagnosis and condition, only part of said diagnosis and condition being arguably objectionable, the objection was too general in that its object was at least in part admissible. See 56 Tex.Jur.2d 510, Trial, Sec. 165. No error is shown.

Next, appellant contends the trial court erred in not allowing her to call the prosecuting attorney as a witness. When appellant sought to call the prosecuting attorney, the jury was removed and during the discussion outside the presence of the jury, the court stated:

"... could we proceed in some other fashion, and I will let the jury go, and you can make a bill on this and I can determine what your proof is, and rule on it a little more intelligently."

From the record it does not appear appellant perfected her bill, and we are not shown what evidence would have been presented. Nothing is presented for review.

Appellant's final contention argues jury misconduct necessitating a new trial. The docket entry for June 29, 1973, reflects:

"Def's Prine's M/N/T (amended) called for hearing, and personally ap-

peared Def. Prine with attorney, M. V. Gonzales [sic], and came State by D.A., and all announced ready. No witnesses presented—evid. only by exhibits introduced. Upon hearing argument, Def's amended M/N/T overruled. . . ."

The only exhibits in the record which appear to have been introduced at the hearing are two affidavits of jurors, both apparently introduced by appellant. From the record, although we can determine that no testimony was heard, we are unable to determine whether these two exhibits constituted all the evidence before the trial court upon its hearing of appellant's motion for new trial, or whether other evidence relating to the contended jury misconduct was also before the court. Accordingly, we are not able to review the trial court's decision to overrule appellant's motion for new trial, and do not reach the issue of whether the statements in the affidavits would show jury misconduct.

Finding no reversible error, the judgment is affirmed.