Charles Casswel
**BREWINGTON, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 08–84–00389–CR.**

Court of Appeals of Texas,
El Paso.

Jan. 8, 1986.

Bryan H. Hall, Jeffrey C. Brown, Scott, Hulse, Marshall, Feuille, Finger & Thurmond, El Paso, for appellant.

Steve Simmons, Dist. Atty., El Paso, for appellee.

Before STEPHEN F. PRESLAR, C.J., and WARD and SCHULTE, JJ.

OPINION

SCHULTE, Justice.

This is an appeal from a conviction for indecency with a child. The jury assessed punishment at twenty years imprisonment. We affirm.

The indictment alleged two counts of indecency by touching the breast and genitals of Appellant's ten-year-old adopted daughter S___ B___. The evidence reflected that the last incident occurred some time during the latter part of summer in 1983. Prior to jury submission, the State elected to proceed on the genital contact count alone.

Appellant's first two grounds of error challenge the State's introduction of extraneous offenses committed from 1961 to 1975 against two of Appellant's natural children by a prior marriage. Other extraneous offenses against the natural children's friends and against a daughter of his second wife from 1977 to 1983 were not preserved by the "running objection" lodged below and are not complained of on appeal. Appellant's present complaint is threefold: 1) the extraneous offenses are too remote in time to the alleged offense; 2) the offenses were not sufficiently similar in context or mode of commission to justify their introduction; 3) the nature of the State's direct evidence precluded use of extraneous offenses, their prejudicial effect greatly outweighing the probative value. We shall analyze these contentions individually.

Appellant relies upon *Bachhofer v. State*, 633 S.W.2d 869 (Tex.Crim.App.1982) for his assertion of remoteness. See also: *James v. State*, 554 S.W.2d 680 (Tex.Crim. App.1977); *McDonald v. State*, 513 S.W.2d 44 (Tex.Crim.App.1974); *Robledo v. State*, 480 S.W.2d 401 (Tex.Crim.App.1972); *Lang v. State*, 698 S.W.2d 735 (Tex.App.—El

Paso 1985, petition pending). Under the foregoing case authority, an excessive length of time between indicted and extraneous offenses will preclude admission unless the interval is bridged by intervening misconduct of a similar nature. The following summary depicts the chronological sequence of extraneous offenses utilized in this case:

1961 First breast and genital fondling of natural daughter C____ D____ (age 5).

1961–64 Manual and oral contact with breast and genitals of C____ D____ twice weekly (age 5–8).

1964–66 Same intimate contact continues over protest of C____ D____ and mother (until age 10).

1967–72 Continued attempts at intimate contact; use of alcohol to render C____ D____ vulnerable; encourages sexual activity as C____ D____ begins dating, providing phrophylactics (age 11–16).

1970 Verbally suggests intercourse to C____ D____ while nude (age 14).

1970–75 Oral and manual contact with genitals of natural son C____ H____ (age 5–11).

1972 Ceased acts toward daughter C____ D____ when she left home (age 16).

1975 Last sexual contact with son C____ H____ (age 11).

1975 Divorce from first wife.

1976 Marriage to mother of present complainant S____ B____ (age 3) and her sister W____ B____ (age 9).

1977–78 Began fondling breasts and vagina of W____ B____ (age 10) three or four times weekly.

1979 Family moved to Amarillo; continued sexual contact with W____ B____ (age 12–13), but frequency reduced to once or twice weekly; began fondling breasts and vagina of complainant S____ B____ (age 7).

1979–82 Continuing sexual contact with W____ B____ and S____ B____.

January 82 Last sexual contact with W____ B____ (age 15) six to eight months before family returned to El Paso.

July 82 Mother, W____ B____ and S____ B____ move to El Paso; Appellant visits on week-ends.

November 82 Appellant resumes full-time residence with family in El Paso.

Summer 83 Last fondling of breast and vagina of S____ B____ (age 10).

December 83 Admission by Appellant to wife as to sexual contact with W____ B____.

January 84 Wife, W____ B____ and S____ B____ move to grandmother's house and begin therapy; contact with S____ B____ first suspected.

April 84 Therapy session expressly reveals molestation of S____ B____.

The continuity of extraneous misconduct between 1961 and the commission of the indicted offense satisfies the remoteness rule. The evidence depicted constant indecent sexual contact with these four children, beginning at ages five, five, ten and seven respectively. Initiation of contact with the next child overlapped the course of conduct with the older child in each family. The only gap was between the 1975 divorce from the first wife and the initial contact with W____ B____ in 1977, during the first year of Appellant's marriage to her mother. Presumably he was not residing in a household with children during part of 1975 and 1976. Thus, the gap in misconduct amounted to less than eighteen months over a twenty-two year period. If there is anything remote in this sequence of events, it is the absence of sexual misconduct with children.

■ Appellant next contends that the extraneous offenses present dissimilar contexts and modes of commission, rendering them inadmissibly irrelevant to any issue in the indicted offense. As discussed below, the material issue supported by these extraneous offenses was the intent of the Appellant. When such is the case:

The degree of similarity required is not so great here as when identity is the material issue, and extraneous offenses are offered to prove *modus operandi*.

See, e.g., *Ransom v. State,* 503 S.W.2d 810 (Tex.Cr.App.1974).

*Morgan v. State,* 692 S.W.2d 877, n. 6 (Tex.Crim.App.1985). The initial similarity in this case is the age of the victims. Both C____ D____ and C____ H____ were first subjected to this contact at age five, S____ B____ at age seven and W____ B____ at age ten. Even the variance provided by W____ B____'s age is tempered by the fact that she was not accessible to Appellant until age nine.

Additionally, the setting in which the acts took place is consistent, either in the family home (all four children) or the family car (C____ H____ and S____ B____). There is no suggestion of molestations outside these protected locales. Even the suggestion of inappropriate sexual overtures to the children's friends or a foreign exchange student indicate occurrence in the same setting.

The type of contact involved is also sufficiently similar in light of the overall pattern of behavior and the standard applicable in a non-identity case. In all cases, manual contact with the child's genitals was involved; with the girls contact was also made with their breasts. The additional oral contact with the genitals of C____ D____ and C____ H____ we do not find sufficiently significant to vitiate their admissibility. With C____ H____, W____ B____ and S____ B____, intercourse was never attempted. It was suggested to C____ D____, however; this distinguishing feature must be discounted in light of the overall sequence of events. It occurred at a more advanced age of the child than was available in the other situations. The other three children were removed from the Appellant's presence sooner. In any event, intercourse did not even occur with C____ D____. In fact, another point of comparison is that, even manually, no penetration ever occurred with any of the children. A final common feature with two of the victims, C____ D____ and W____ B____, was the encouragement of sexual activity provided by the Appellant when the girls reached puberty and began dating. Both were verbally encouraged and provided with or offered birth control measures.

The fact that all children did not reside in the same household or come from the same family unit is not significant. Each stood in the same general child-to-parent relationship with the Appellant, whether natural child, adoptive child or stepchild. While in three instances the contact was heterosexual, in one it was homosexual. At first blush this seems to be a distinguishing feature. However, from the testimony of State's witness social worker Larry Wright and defense psychology witness Dr. Susan White, bisexual contact with prepubescent children is in fact a common or pattern characteristic of fixated pedophiles. Dr. White preferred a diagnosis of regressed pedophile over Wright's evaluation but did not negate the fixated pedophile profile. Thus, even this apparently distinguishing feature may in fact be viewed as a consistency. We find the extraneous offenses sufficiently similar in context and method to support admissibility.

 Finally, we address the question of whether the nature of the State's other evidence precluded the use of any extraneous offenses in this trial. A defendant is of course not to be tried as a criminal in general, but only for the offense alleged in the indictment. There must be a probative relationship between proffered extraneous offense evidence and the evidence to prove a contested element of the State's indicted offense. *Albrecht v. State,* 486 S.W.2d 97, 100 (Tex.Crim.App.1972). The elemental probative value must outweigh the prejudicial effect of the exposure of these extraneous offenses to the jury. Id, at 99. Under *Albrecht,* intent and motive of the actor are expressly recognized as appropriate areas for proof via extraneous misconduct. Under *Garcia v. State,* 573 S.W.2d 12 (Tex. Crim.App.1978), the rationale for such proof was expanded to include demonstration of guilty knowledge, unnatural attention toward the child and the probability of the indicted act. The *Garcia* expression has been repeated by the Court of Criminal Appeals in recent months. *Crawford v.*

*State,* 696 S.W.2d 903 (Tex.Crim.App.1985). In a footnote to the *Morgan* opinion, Judge Clinton has cautioned restraint in the application of the *Garcia* principle, urging a non-mechanical evaluation of its propriety on a case-by-case basis. The probative value must still outweigh the prejudicial effect, and there should be some compelling need by the State to utilize this form of collateral proof. *Albrecht* and *Garcia* approve these issues of state of mind as a likely basis for use of extraneous offense evidence because generally speaking the state of mind element in any offense is the least susceptible to objective proof. The mere convergence of a plea of not guilty and an intangible element of the offense has never constituted a blanket authorization for use of extraneous offenses. Where the mode of commission renders the motivation self-evident, the use of extraneous offense proof should be avoided. *Prior v. State,* 647 S.W.2d 956 (Tex.Crim.App. 1983). As expressed in *Morgan:*

> This is really only to say that where "the defendant's conduct, his remarks and all surrounding circumstances," *McKinzie v. State,* supra, fail of themselves to establish the requisite intent, the need on the part of the State to present some alternate indicia of that intent will more than likely transcend any prejudice resulting therefrom.

Two final subsidiary rules established by case authority should be noted prior to evaluating the procedure in this case. The *Albrecht* line of cases further sanctions the use of extraneous offenses to rebut a defensive theory. Secondly, the premature introduction of rebutting evidence of extraneous offenses, while erroneous, is not reversible. *Jones v. State,* 587 S.W.2d 115 (Tex.Crim.App.1979).

The complex of rules recited above must next be compared to the State's evidence on the indicted case and the defense's evidentiary response. The *Garcia, Prior* and *Morgan* cases dictate that we first look only at the State's presentation on the indicted case. In *Prior,* the defendant exposed his genitals, at first in a very awkward manner from inside a car. At the time, he had an erection and used his hand to wave his penis back and forth. The court ruled that the actor's intent to sexually arouse or gratify himself was readily inferable from this conduct alone, rendering extraneous offense proof unnecessarily prejudicial in relation to the probative value added or needed by the State. In *Morgan,* the complainant testified to a quick touch between her legs. She further testified without objection that he had touched her in a similar fashion on other occasions, including the night before the indicted offense. Her sister testified as to a similar incident directed towards her one month earlier. Judge Clinton, authoring a unanimous opinion for the en banc court, held that this situation was distinct from *Prior.* Specific intent to gratify the defendant's sexual desire could not be readily inferred. The bland presentation of evidence as to the indicted offense was as easily susceptible to an interpretation of accidental touch.

We find the present case more akin to *Morgan* than *Prior.* Looking only at the indicted case, Appellant did not verbalize any sexual matter during the contact, he did not expose himself, he did not manipulate himself, there was no evidence of any erection and he did not penetrate the complainant. In light of possible interpretations as non-culpable contact or improper contact for a different purpose, this state of evidence did not readily prove a specific intent to sexually gratify Appellant himself. The extraneous offenses provided proof of erection, ejaculation, verbal references to personal sexual arousal and gratification, and oral sexual contact which served to eliminate any non-culpable interpretation and addressed the specific intent alleged in the indictment. Thus, under the *Morgan* rationale the extraneous offense evidence provided a significant probative element overriding any ancillary prejudicial effect.

In applying the *Albrecht* rebuttal rationale, as well as the *Crawford* and *Garcia* analyses, we look to the evidence as a whole. In addition to moving for a directed

verdict on the specific intent issue, Appellant's defensive approach was twofold: 1) the contact with S___ B___ last occurred in Amarillo, before the daughter moved to El Paso, hence presenting statute of limitation and venue problems for the State, and 2) the touching of S___ B___ even in Amarillo was innocently done. The first assertion was vigorously pursued by cross-examination of the State's witnesses, Hector Gracia (DHR caseworker), Beth Felty (DHR caseworker), the mother of S___ B___ and W___ B___ and the latter two children themselves. The cross-examination focused on the manner in which S___ B___ first made outcry. It occurred some four months after W___ B___ had made outcry and after numerous family and therapy discussions in which S___ B___ was exposed to details of Appellant's contact with W___ B___. The defense further emphasized that initial statements made by S___ B___ suggested that completed contacts occurred only in Amarillo and that only forestalled attempts at fondling occurred in El Paso.

With regard to the second prong of the defense, counsel began to probe for an innocent touching interpretation from the cross-examination of the very first witness. Hector Gracia and Beth Felty were both asked if they were aware of S___ B___'s athletic involvement. They were not. Responding to the same questions, S___ B___ and her mother both testified that S___ B___ was active in school and extracurricular athletics, involving a great deal of running, that she frequently complained of growing pains, muscle aches and leg cramps, that Appellant frequently administered massages to her torso and legs, and that at least some of the allegedly offensive touching occurred during these massages. Bearing in mind the *Jones* rule on premature rebuttal, we find the extraneous offenses admissible to answer the ambiguity raised by the good touch-bad touch defense. The same rationale for admissibility was expressed in *Morgan.* In conclusion, we find the use of the extraneous offenses permissible in this case. Grounds of Error Nos. One and Two are overruled.

■ In Ground of Error No. Three, Appellant contends that the court erred in permitting the State to introduce expert testimony from Larry Wright, analyzing the sociological and psychological aspects of the indicted and extraneous offenses. Wright finally concluded that Appellant was a "fixated pedophile." Appellant contends that Wright lacked the competency qualifications of an expert witness. Noting the experience, training and licensing which Wright did not possess, we nonetheless conclude that his other qualifications satisfy the admissibility requirements expressed in *Holloway v. State,* 613 S.W.2d 497 (Tex.Crim.App.1981) and *Chambers v. State,* 568 S.W.2d 313 (Tex.Crim.App.1978). Wright is a state licensed social worker serving as Staff Development Specialist for the Department of Human Resources. In that capacity, he is responsible for training child protective service workers in the El Paso and Midland/Odessa regions of DHR. He received a bachelor's degree in special education from Colgate and a master's degree in social work, specializing in human sexuality. In preparing his master's paper, he conducted nine months of field study specifically dealing with human sexuality in mentally retarded children. He is a partner in a clinical practice called Sex Offenders Treatment Program. The practice involves treatment of adult offenders against children referred by the courts and the West Texas Regional Adult Probation Department. In addition, Mr. Wright conducts group therapy sessions through DHR for adult male offenders. Appellant attended twenty of those sessions. Mr. Wright was not present at all sessions, but contrary to Appellant's brief, the record does not indicate that he missed half of the sessions. The group facilitator's file was available to Mr. Wright for sessions he did not attend. The sessions were both structured and unstructured. Mr. Wright characterized Appellant as one of the more outspoken members of the group, and based his evaluation in part on Appellant's own statements.

Mr. Wright attended a one-week human sexuality course at the Masters and Johnson Institute and a one-week course conducted by the Multi-Interdisciplinary Child Sexual Assault Intervention and Treatment program. He himself conducted six workshops for DHR on Intervention in Families with Childhood Sexual Assault. He conducted a state-wide adult offender workshop for the Texas Correctional Association and also trains adult probation department officers. He has also presented papers to the American Council of Childhood Educators and the American Council of Sex Educators. At the time of trial, Wright was scheduled to conduct training sessions for the district attorney's office in Cambridge, Massachusetts, and the Sex Crimes Division of the Honolulu Police Department. In addition to conducting group sessions for DHR and private practice referrals, Mr. Wright served as an overflow caseworker for DHR, including initial investigation and diagnostic work.

Appellant contends that, not being a licensed psychiatrist or psychologist, Wright was not qualified to offer a diagnostic opinion of Appellant as a "fixated pedophile." It is apparent from the testimony of Wright and defense expert Dr. Susan White that the fields overlap in this area. Appellant's objection is tantamount to asserting that on the issue of how a watch works one would have to call a mechanical engineer as opposed to a watchmaker. Wright testified that diagnostic categorization of offenders is a regular and necessary part of his function at DHR. Such analysis is critical to determine prognosis, treatment regimen and DHR position on intervention for the protection of the spouse or child. The court, out of the jury's presence, directly inquired into the basis for Wright's diagnostic conclusion. It is significant to compare the response to the testimony of defense expert witness Dr. Susan White. While preferring a diagnosis of regressed pedophile, her testimony reflects concurrence on the definition and symptomology of both types of pedophile. Matched against her testimony, it appears that Wright focused upon the same salient behavioral features in evidence. She did not absolutely negate Wright's conclusion. In fact, the differing opinions could be due to the fact that Dr. White's information came exclusively from Appellant in four sessions and excluded other evidence produced at trial and relied upon by Wright. The complaints lodged by Appellant are more pertinent to the weight and credibility of Wright's testimony than to its admissibility. Ground of Error No. Three is overruled.

■ Appellant's final ground of error asserts that while Wright's testimony may have been admissible at punishment, it was error to introduce it at the guilt stage as bad character evidence. The evidence only incidentally depicted bad character. The primary thrust of this evidence was for proper expert evaluation of the indicted and extraneous offenses in terms of the elements of the indicted offense. Having concluded that the extraneous offenses were admissible under *Albrecht, Garcia, Morgan* and *Crawford* and not in controvention of *Prior,* we further conclude that the expert testimony was appropriate to establish the third requirement expressed by Judge Clinton in *Morgan*—the logical relevance of the extraneous offense to proof of the indicted offense.

> Before an extraneous offense is admissible to negate the possibility of accident under Wigmore's doctrine of chances, such offense must be sufficiently similar in nature to the charged offense that the inference of improbability of accident logically comes into play.

When evaluating patterns of misconduct involving burglary or robbery, similarities and differences for *Albrecht* purposes are generally readily discernible to the lay juror. In forgeries, signatures may be subject to lay comparison, but not to the exclusion of expert witness evaluation. Entering the realm of state of mind in sex offense cases, we move even further beyond the range of lay experience and understanding. Behavior which is not similar or which is even inconsistent to a layman may in fact display great consistency to an ex-

pert witness. An abstract example is provided in this case through Mr. Wright and Dr. White. Both testified that bisexual contact is characteristic of fixated pedophiles, while regressed pedophiles tend to interact only heterosexually. Thus, for example, while the homosexual extraneous offense with C____ H____ may appear inconsistent with the indicted offense, if the fixated pedophile diagnosis were correct, this extraneous offense would be more, not less, consistent with the indicted offense. The testimony of Wright only appears to be premature character evidence. In reality, it was a proper and necessary aid to the lay jury in assessing the logical relevance of the extraneous offenses to the proof of the mental element of the indicted offense and the rebuttal of the defensive theories. Ground of Error No. Four is overruled.

The judgment is affirmed.