Earl Victor DUNNINGTON, III, Appellant,

v.

The STATE of Texas, Appellee.

No. 08-86-00213-CR.

Court of Appeals of Texas, El Paso.

Nov. 25, 1987.

Rehearing Denied Dec. 23, 1987.

Nancy L. Hart, Hart & Co., Midland, for appellant.

Al W. Schorre, Jr., Dist. Atty., of Midland County, Midland, for appellee.

Before OSBORN, C.J., and FULLER and WOODARD, JJ.

## OPINION

FULLER, Justice.

This is an appeal from a conviction for indecency with a child. This is a companion case to *Dunnington v. State*, 740 S.W. 2d 899 decided this same date, in which . Appellant was convicted of aggravated sexual assault on a child. The jury assessed punishment at seven years' imprisonment on the indecency conviction and ten years' imprisonment on the aggravated sexual assault. Both sentences were probated. We reverse and remand.

Points of Error Nos. Two through Ten challenge the admissibility of certain portions of medical records generated dur-

ing rape examinations of Appellant's two stepdaughters following their outcries of sexual abuse. All evidentiary aspects of this case are governed by the state of the law prior to the effective date of the Texas Rules of Criminal Evidence. We find no hearsay or right to confrontation error with regard to these records as a whole. Following satisfaction of the business records admissibility predicate, they were properly introduced under former Article 3737e of the Texas Revised Civil Statutes. Both the recorded observations and the diagnostic opinion of the treating physician were admissible. *Prine v. State,* 509 S.W. 2d 617 (Tex.Crim.App.1974); *Drakes v. State,* 505 S.W.2d 892 (Tex.Crim.App.1974); *Roddy v. State,* 494 S.W.2d 174 (Tex.Crim. App.1973); *Williams v. State,* 492 S.W.2d 496 (Tex.Crim.App.1973); *Batiste v. State,* 462 S.W.2d 30 (Tex.Crim.App.1971). We find the doctor's conclusions to be more in the nature of factual observations or at least common medical diagnosis upon which competent physicians would normally agree. *Granviel v. State,* 552 S.W.2d 107 (Tex.Crim.App.1976), *cert. denied,* 431 U.S. 933, 97 S.Ct. 2642, 53 L.Ed.2d 250 (1977). The patients' allegations contained in the records were admissible insofar as relevant to the medical diagnosis and treatment and the issues at trial. See, e.g., *Drakes,* at 894. In *Prine,* a murder prosecution, the Court of Criminal Appeals distinguished between the admissible record references to the charged murder offense and the inadmissible medical references to prior child abuse. In our case, the prior sexual abuse of the children constituted admissible extraneous offenses. Hence, medical record references to both instant and prior assaults were admissible. The records did contain inadmissible hearsay concerning the context in which the assaults occurred. These were unrelated and unnecessary to the diagnosis and treatment. Specific complaint as to these portions of the records was raised, however, for the first time on appeal. When the exhibits were first offered, the only objection addressed was the admissibility of the diagnostic conclusion of the physician. It was properly overruled. Later, the de-

fense reurged an objection generally complaining of the included hearsay statements of the girls but not specifying which assertions. The second objection was untimely and too general to preserve error. *Prine,* at 620. Points of Error Nos. Two through Ten are overruled.

Points of Error Nos. Eleven and Twelve challenge the constitutional propriety of the parole instruction given the jury under Tex.Code Crim.Pro.Ann. art. 37.07, sec. 4 (Vernon Supp.1987). We agree. *Rose v. State,* (Tex.Crim.App. 193–87, November 12, 1987). Points of Error Nos. Eleven and Twelve are sustained.

We now turn to the troublesome issue presented in Point of Error No. One—the expert testimony of D.H.R. Caseworker Yolanda Aguilar. The State's case-in-chief depicted an increasing intensity of sexual abuse of Appellant's two stepdaughters over a two-year period. Belated outcries by the children and by a cognizant natural mother was before the jury from the outset. Focusing in part on the timing of the belated outcries to the mother and the mother's delay in reporting the allegations to the police, Appellant's defense asserted the falsity of the accusations. It was Appellant's contention that the children were falsely pursuing the allegations under the domineering influence of his vengeful estranged wife. The desire for revenge was purportedly motivated by Appellant's responsibility for the termination of social security survivor benefits for one child, the repossession of the mother's automobile, and his efforts to testify for the wife of his ex-wife's boyfriend in the other couple's divorce action. Appellant sought to correlate the outcry and police report dates with critical stages in the aforementioned controversies. On rebuttal the State offered the testimony of Yolanda Aguilar, a purported expert in the field of sexual abuse of children, regarding "certain principles or maxims that are recognized by the experts" in this field. Aguilar testified as to opinion in the field interpreting belated outcry, propensity for expansion of sexual misconduct by the offender outside the family setting, the "conditioning process" to

which offenders subject their child victims, reasons for "spousal denial" and general profile characteristics of the three recognized categories of pedophiles (fixated, regressed and sadistic).

The defense repeatedly objected that the testimony was improper rebuttal, improper bolstering, intrusive upon the function of the jury, irrelevant in certain instances and not of a content necessitating expert assistance to the jury in assessing the evidence and issues. We note that trial argument over admissibility incorporated reference to two opinions by this Court. *Brewington v. State*, 702 S.W.2d 312 (Tex.App.—El Paso 1986, no pet.), and *Garcia v. State*, 712 S.W.2d 249 (Tex.App.—El Paso 1986, PDRR). Neither is applicable in this case. In *Brewington*, the only issues were the expert qualifications of a D.H.R. caseworker and the guilt/innocence relevancy of his testimony. In *Garcia*, Yolanda Aguilar was called to testify on rebuttal that "she had never seen a mother try to get a child to lie about being sexually abused for any reason." *Garcia*, at 252. While finding this type of credibility bolstering improper, this Court also found that the error had not been preserved for review.

The trial court was confronted with the objection that this testimony would not properly assist the jury in its function. Having heard the prospective testimony outside the presence of the jury, the trial judge was called upon to determine whether:

> [I]t is appropriate because of unfamiliarity of lay jurors with a body of expertise which is relevant to the resolution of the litigation.

*Holloway v. State*, 613 S.W.2d 497, 502 (Tex.Crim.App.1981). *Garcia*, at 242. Compare: Rule 702, Tex.R.Crim.Evid. (Vernon Special Pamphlet 1987). The jury is the ultimate fact finder in our system. Procedures which curtail or impinge upon the jury's role are strictly drawn, strictly scrutinized and viewed with skepticism. This applies not only to direct impositions upon the jury's prerogatives—such as presumptions, inferences, limiting instructions, strict liabilities, appellate review of eviden-

tiary conclusions, etc., but also to practices which tend to seduce the jury into abrogating its function and deferring its responsibility to other evaluators. Thus, character and reputation evidence is circumscribed in its impact by clearly restricting its foundation and scope. Limiting instructions concerning prior offenses and convictions seek to prevent the instant jury from deferring to supposed prior jury or court conclusions as to the general criminality of the accused, without careful assessment of the violation it has been sworn to scrutinize. So, too, the use of expert testimony presents a risk of overbearing the jury in its deliberative responsibility. The disparate expertise of the witness and the average juror tends to produce a natural inclination to accept the expert testimony as gospel. Such inclination is magnified by the natural disinclination of the average juror to sit in judgment of another, to include assessment of punishment. To avoid, or at least minimize these effects, the use of expert testimony is restricted to those situations in which the expert's knowledge and experience on a relevant issue are beyond that of the average juror. The decision is still the jury's, but the testimonial expertise is provided to enable it to better comprehend the full significance of the evidence. The use of expert testimony in any other situation can overbear the jury and tantalize its inclination to defer its responsibility. Whatever the reason, such practice strikes at the very core of our criminal justice fact-finding process.

■ Turning to Ms. Aguilar's testimony, we find just such practice. With regard to belated outcry, she identified two factors explaining such delay: (1) fear for the safety of the victim or a threatened loved one, and (2) fear of loss of attachment (removal of child or parent). These are not such complicated motivations as necessitate expert explanation. They arise in case after case—including those not involving child sexual abuse. To the extent that these motivations were raised by the evidence, they were relevant and susceptible to jury argument. They were not so foreign to the lay juror's experience that the lack of expert interpretation would deprive the evi-

dence of full significance or the ensuing argument of credible appreciation. The same is true of the "spousal denial" explanation—the nonoffending spouse's desire not to believe a loved one capable of such heinous conduct, or if discovered, the desire to believe that once confronted, he will not continue such behavior. Such elementary and commonplace sentiments fill our daily lives even outside the criminal justice process. Aguilar further explained the "conditioning process" as having three distinct goals: (1) winning the confidence of the child; (2) gradually committing the child to secrecy concerning the improper behavior; (3) physically preparing the child for penetration.

All of the aforementioned explanations may be perfectly true. They may have been focused upon by experts in their research. Some effort may even have been made to quantify the existence, frequency, consistency or intensity of these factors. Certainly they have titles such as "spousal denial" and "conditioning process." None of this, however, converts the commonplace into the extraordinary. Expert testimony is not justified by the expert's need to publish his work or the prosecutor's need to preclude the jury from making up its own mind. It is justified when it enhances the jury's fact-finding process, instead of abrogating it. It is justified when it enables the jury to heighten its appreciation of the full import of the evidence. Does the expert's testimony have probative value that outweighs its prejudicial potential? Not in this case. Point of Error No. One is sustained.

The judgment is reversed and the cause remanded for new trial.