**Alfredo Juardardo RODRIGUEZ,
Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 1273–89.**

Court of Criminal Appeals of Texas,
En Banc.

July 3, 1991.

John Mustachio, Houston, (court appointed), for appellant.

Tom O'Connell, Dist. Atty., and J. Bryan Clayton, Asst. Dist. Atty., McKinney, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

PER CURIAM.

The appellant, Alfredo Juardardo Rodriguez, was convicted for the offense of aggravated sexual assault of a child, V.T.C.A. Penal Code, § 22.021(a)(2)(B), and the jury assessed his punishment at sixty years confinement in the Texas Department of Criminal Justice, Institutional Division. The Eighth Court of Appeals affirmed the conviction in an unpublished opinion, *Rodriguez v. State*, No. 08–89–00112–CR (Tex. App.—El Paso, delivered August 2, 1989).

The court of appeals, in affirming appellant's conviction, concluded, *inter alia,* that the trial court did not err in permitting Lori Moore, an investigator with the Texas Department of Human Services, to express an opinion that the child victim had been sexually abused. We granted the appellant's petition for discretionary review to determine whether the court of appeals erred in reaching this conclusion.

However, upon further review of the case, we conclude that appellant's petition was improvidently granted. As in every case where we determine that the decision to grant review was improvident, we do not necessarily adopt either the language or the reasoning of the lower court. Accordingly, appellant's petition for discretionary review is dismissed.

CLINTON, J., dissents.

OVERSTREET, Judge, dissenting.

This Court granted appellant's petition for discretionary review to determine whether the court of appeals erred in concluding that the trial court did not err in permitting a Texas Department of Human Services (DHS) investigator to testify expressing an opinion that the child-victim had been sexually abused. Because this Court decided in *Hopkins v. State*, 480 S.W.2d 212, 220 (Tex.Cr.App.1972) that an expert witness could not testify as to the credibility of another witness, I do not agree with this Court's majority conclusion that said petition was improvidently granted; therefore, I dissent.

In the State's case in chief, it utilized the testimony of Lori Moore, the above-mentioned DHS investigator. She related to the jury that within the scope of her child abuse investigation of appellant she had on numerous occasions interviewed the complaining witness. As the court of appeals set out in its opinion, Moore recounted to the jury that she possessed a Bachelor's degree in social work and had received numerous on the job hours of subsequent training as a child protective service specialist. In the course of the State's direct examination, the prosecutor questioned Moore in the following tenor:

Q. What are some—in your experience both as an ongoing caseworker or trained caseworker and in your specialized training, what are some of the symptoms that a sexually abused child exhibits?

[Defense attorney interposes an objection.]

\* \* \* \* \* \*

Q. Okay. What are some of the symptoms that through your training you would recognize as being symptoms that a sexually abused child would exhibit?

A. There are a lot. It could range from a child being very withdrawn, a very shy, inward child, to—it could be a child who is extremely vocal and outward and, you know, almost overly so. It could also—

Q. Go ahead.

A. It could also be anything from, you know, that they're not allowed to see—they're almost afraid to look at boys or more so than a normal kid of that age would be.

Q. Did you—during the course of time that you interviewed Rosemary, did you see any symptoms or signs in her behavior that would confirm any allegations of sexual abuse?

\* \* \* \* \* \*

Q. Okay. Did Rosemary exhibit any symptoms that would confirm, based upon the symptoms you have come to recognize as an expert, that would confirm your suspicion that she had been sexually abused?

A. Yes, she did.

Q. What were those symptoms?

A. Rosemary was a very inward child, more so than you would just say a shy child would be. She was even more so. \* \* \*

Moore then went on to relate to the jury that, in addition to the child's excessive inwardness, she also demonstrated a fearful attitude.

In rejecting the appellant's contentions the court of appeals opined:

Tex.R.Crim.Evid. 702 provides for expert opinion testimony if it will assist the trier of fact to understand the evidence or to determine a fact in issue. Rule 704 allows opinion testimony, if otherwise admissible, even if it embraces an ultimate issue to be decided by the jury. However, these rules do not contemplate the introduction of expert testimony on the question of who is telling the truth and who is not. *Garcia v. State*, 712 S.W.2d 249 (Tex.App.—El Paso 1986, PDRR). It is the Appellant's primary assertion that Moore's testimony bolstered the testimony of the complaining witness. Had the question been answered as it was initially phrased with regard to "all allegations" of sexual abuse, there might be some merit to the Appellant's contention. However, the question was rephrased and the expert responded that the symptoms confirmed her suspicion that the

complainant had been sexually abused. This difference is significant in that it tends to remove the linkage to the Appellant and isolates the testimony solely to the expert's observations and opinions. This testimony is much more in the realm of a physician's conclusions based upon factual observations or common medical diagnosis upon which competent physicians would normally agree. Such testimony is admissible. *Dunnington v. State*, 740 S.W.2d 896 (Tex.App.—El Paso, 1987, PDRR). Further, we note the existence of other testimony aside from that of Moore and the complaining witness which implicates the Appellant. The complainant's sister related she had witnessed instances of sexual contact between the complainant and the Appellant. A physician testified that the physical examination revealed that the victim, a minor, had engaged in multiple instances of sexual intercourse in the past. The other evidence tends to vitiate the error, if any, that occurred in allowing Moore's testimony.

Whether Moore's testimony is of the forbidden genre is to be determined by the nature and character of the testimony itself and the significance a trier of fact might place on it. In this instance, the court of appeals placed undue emphasis on the skill of the examiner and the artfulness of the questions posed to the witness. The query in this case is whether the witness, based upon her supposed expertise, expressed an opinion on the credibility of a witness, specifically, the complaining witness. The State asked and received an answer from witness Moore as to whether the victim's exhibition of certain symptoms "confirmed" her suspicions of sexual abuse. Because of the form of the question and the nature of the answer, the witness was indeed able to express a "backdoor" opinion on the credibility of the victim's testimony. Granted the methodology utilized did not in the classic or textbook sense allow for a direct expression as to the truthfulness of the victim's testimony, but nevertheless Moore was directly able to opine on the credibility of the child-victim. As such, the admissibility must be scruti-

nized under the rules of evidence allowing for the admission of expert testimony.

This case was tried after the advent of the Rules of Evidence promulgated by this Court to govern criminal cases. Therefore, the precise issue which this Court should now address was the question left open in *Pierce v. State*, 777 S.W.2d 399 (Tex.Cr. App.1989). In *Pierce*, supra, this Court faced the issue concerning the trial court's exclusion of expert testimony relevant to the reliability or unreliability of eyewitness identification. Like the case *sub judice*, the *Pierce* Court was called upon to construe Tex.R.Crim.Evid. 702, which reads:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

On the issue then at hand, Judge Campbell, writing for the majority in *Pierce*, *id.* at 414, stated:

> Appellant argues that Tex.R.Crim. Evid. 702 broadly defines expert testimony. He maintains that because Dr. Bernstein's testimony would assist the jury in evaluating the eyewitness testimony in this case, it should have been admitted. The State counters by citing *Hopkins v. State*, 480 S.W.2d 212 (Tex.Cr.App.1972), and its progeny, for the proposition that psychological evidence may not be admitted for impeachment purposes and that three Courts of Appeals have specifically applied *Hopkins* to this type of expert testimony. *Thomas v. State*, 748 S.W.2d 539 (Tex.App.—Houston [1st] 1988); *Welch v. State*, 677 S.W.2d 562 (Tex. App.—Eastland 1984); *Burke v. State*, 642 S.W.2d 197 (Tex.App.—Houston [14th] 1982). Although we agree with the State's position that exclusion of this evidence was not error, we decline to base our decision on our earlier holding in *Hopkins*, 480 S.W.2d at 212.

In a footnote extant to the preceding paragraph Judge Campbell added:

*Hopkins* was decided long before adoption of our present rules of evidence. Thus, our broad holding in *Hopkins* that psychological evidence is inadmissible for impeachment purposes is somewhat in doubt given the breadth of Rule 702. This change in evidentiary rules, however, does not imply that the narrow holding in *Hopkins* was necessarily incorrect. See *Hopkins*, 480 S.W.2d at 221 (Morrison, J. concurring and dissenting).

*Pierce,* 777 S.W.2d at 415, n. 3.

As an integral part of the rule announced in *Hopkins* was the proposition that the expert witness could not testify as to the credibility of another witness. Thus the question before this Court is the continued viability of *Hopkins* in light of Rule 702, supra.

In *Hopkins, id.* at 218, this Court first set out the proper predicate required for the admissibility of expert testimony, *viz.,* (1) The expert must be competent and qualified to testify; (2) the subject must be one upon which the aid of an expert opinion will be of assistance to the jury; and (3) his testimony must not state a legal conclusion. After having repudiated the objection to expert testimony on the basis that it "invaded the province of the jury," the Court went on to exclude expert opinion testimony concerned with witness impeachment for entirely different reasons:

> Our principle fear in this regard is that the admission of psychiatric testimony will often cause the trial to become not only a trial of the defendant, but also a trial of the witness. If one side calls a psychiatrist for impeachment purposes, the other side will feel duty bound to do likewise (and rightly so). The result will likely be delay, confusion of the principal issues of the trial, and expense to the parties. However, these possibilities alone would not be sufficient to cause us to exclude such testimony. Our prime reason is that, the benefit to be gained from such testimony is not great enough to offset the disadvantages which we have listed.

\*　\*　\*　\*　\*　\*

As is so often the case in those instances where psychiatric testimony is now permitted, the jury will quite likely be witness to a "battle of experts" who are called, in reality, not for the general knowledge which they can bestow upon the court, but for the partisan benefit which the parties who called the witness hope to receive.

> It is true that these same objections can be properly leveled at all expert testimony. However, we feel that psychiatric impeachment testimony differs, for the reasons stated, from other expert testimony. In short, we do not feel that such testimony will enable the jury to better decide the issue. The purpose of expert testimony is to supply knowledge which would not ordinarily be available to the trier of fact. While psychiatric information is not known by most laymen, there is still available to the jury the usual impeachment evidence such as criminal convictions and prior inconsistent statements to assist in the determination of credibility. Thus, unlike the case of highly technical issues, the jury, even without psychiatric testimony will not be left "in the dark." In fact, after being subjected to several conflicting, equivocating and highly technical psychiatric opinions, the jury may actually be more confused than before. We fail to perceive the benefit to be gained from "an amateur's voyage on the fog-enshrouded sea of psychiatry." [Footnotes omitted.]

*Hopkins v. State,* 480 S.W.2d at 220.

The courts of appeals have extended this line of reasoning to prohibit expert testimony which directly or indirectly expresses an opinion on the credibility of a witness. *Kirkpatrick v. State,* 747 S.W.2d 833 (Tex. App.—Dallas 1987, pet. ref'd); *Dunnington v. State,* 740 S.W.2d 899 (Tex.App.—El Paso 1987, pet. ref'd); *Garcia v. State,* 712 S.W.2d 249 (Tex.App.—El Paso 1986, pet. ref'd). Cf. *Thomas v. State,* 748 S.W.2d 539 (Tex.App.—Houston [1st] 1988, no pet.); *Burke v. State,* 642 S.W.2d 197 (Tex. App.—Houston [14th] 1982, no pet.); *Welch v. State,* 677 S.W.2d 562 (Tex.App.—Eastland 1984, pet. ref'd).

Cognizant of this line of reasoning, some commentators have expressed the view that with the arrival of Rule 702, supra, the permissible limit of expert testimony has been expanded by the fact that the predicate has been altered:

As Rule 702 makes clear, expert testimony is not restricted merely to scientific or technical matters, but may be received regarding any "specialized" field of knowledge. Therefore, the Rule 702 standard may result in a slightly broader range of permissible expert testimony than common-law practice. It abandons the requirement that the subject matter of the testimony be one that is beyond the common understanding of the lay juror, replacing it with the helpfulness standard. Thus the court may admit expert testimony that concerns a matter within most jurors' understanding, should it decide that the jurors would nonetheless be assisted in their factfinding function. On several occasions, for example, courts have permitted, pursuant to Federal Rule 702, experts in photographic comparison to testify as to whether the subject of a photograph was or was not the defendant. In these cases, the courts held that the specialized knowledge of the expert would aid the jurors, despite the fact that photographic comparisons fall within the common experience.

The rule points to liberal admission of expert testimony. But all such testimony need not be admitted. A judicious application of the Rule 702 helpfulness standard and Rule 403 balancing factors is necessary. Although the factual basis upon which an expert rests his opinion may be explored on cross-examination and ordinarily affects only the weight accorded the testimony, an opinion is unlikely to meet the helpfulness standard, and may therefore be excluded, if it is based on speculative data or on underlying principles of dubious certainty. Expert testimony may be irrelevant or cumulative. It may also be excluded because it is more likely to confuse or mislead the jury than enlighten it, or because it will unduly delay the trial.

Such determinations must necessarily be resolved on a case-by-case basis, as they will depend on factors such as the content of the testimony, the context in which it is offered, and the state of the evidence. The admissibility of expert testimony is thus for the court to decide as a preliminary question under Rule 104(a). The court's decision should be overturned only for abuse of discretion. This codifies pre-rules Texas practice. [Footnotes omitted.]

*Texas Practice*, Section 702.2, P. 499–501. Goode, Welborn Sharlot (West 1988).

Although the predicate for the admissibility of expert testimony has been somewhat altered with the advent of Rule 702, supra, for an assortment of reasons I do not believe that the ultimate holding of *Hopkins* has been disturbed. Granted the focus has been transformed from a "common understanding of the lay juror" test which precluded expert testimony to a "helpfulness standard," such a substitution was not so radical as to warrant the admission of expert testimony centering on the credibility of a particular witness. The question is not whether credibility is within the common understanding of the average lay juror but, whether such testimony is actually helpful to the jury in assisting them in making a determination as to the believability of a witness. Notwithstanding the Texas Rules of Evidence pertaining to criminal proceedings, unless otherwise provided in the Texas Code of Criminal Procedure "... the jury is the exclusive judge of the facts proved, and the weight to be given to the testimony." Article 38.-04, V.A.C.C.P. Premised on this postulate, this Court has always sanctioned the trial court in instructing the jury that one of the functions exclusively reserved for them was to judge the credibility of the witnesses. Recognizing this, the *Hopkins* Court applied a pre-rule balancing test to this genre of expert testimony and concluded that its admission was outweighed by (1) the likely and unwarranted trial delay; (2) the possible confusion of the principle issues; and (3) that the benefit derived from such expert testimony of this nature was

not great enough to offset all of the stated disadvantages. In addition, this Court was also consumed with the concern that in allowing this testimony the jury could eventually be witnesses to a "battle of experts" on the collateral issue of witness credibility. Certainly, this form of analysis was a precursor to Rule 403, Tex.R.Crim.Evid.:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence.

Rule 403, represents the identical concerns stated in *Hopkins* and we see no need to alter the basis of that decision.[1] It is not so much that the admission of such testimony usurps an exclusive function of the jury to weigh the evidence and determine the credibility of witnesses, but rather that on balance it interferes with the jury role by possibly confusing the issues and causing unfair prejudice in favor of one presenting an expert with purported impressive credentials giving a stamp of truthfulness to the complaining witness' testimony. Such testimony certainly presents a substantial danger that the jury will be caught in a web of expertise "... because of its aura of special reliability and trustworthiness," *United States v. Amaral,* 488 F.2d 1148, 1153 (5th Cir.1973), thus impermissibly bolstering the witness' testimony and unfairly increasing the probative strength before the jury. *United States v. Price,* 722 F.2d 88, 90 (5th Cir.1983). In addition, expert testimony commenting on the believability of a witness is in direct conflict with Rule 608(a) Tex.R.Crim.Evid., which states:

> The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but subject to these limitations: (1) the evidence may refer only to character for truthfulness or untruthfulness, and (2) evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise.

This category of testimony does not come within the purview of this rule. Such evidence does not refer to any character for truthfulness or untruthfulness but poignantly comments on the specific believability and truthfulness of witnesses' accounts and, as such, its admission would be an abuse of discretion. See *United States v. Azure,* 801 F.2d 336 (8th Cir.1986).

I observe that a trend in numerous jurisdictions is now to permit expert testimony to explain the behavior pattern of children who have been the victim of sexual abuse, and some jurisdictions have gone to the extent of allowing such testimony notwithstanding there is a direct impact on the credibility of the complaining witness in that it bolsters the testimony of the witness by describing the behavioral pattern generally found to be present in sexually abused children. This Court in *Duckett v. State,* 797 S.W.2d 906 (Tex.Cr.App.1990), permitted expert testimony concerning what is commonly referred to as Child Sexual Abuse Accommodation Syndrome. *Duckett,* supra, did not extend a carte blanche as to the admissibility of such expert testimony, but rather, after conducting a thorough examination as to the law on this issue in a number of jurisdictions throughout this country concluded that under the factual context of that case the expert testimony was properly admitted by the trial court.

In *Duckett,* supra, the defendant was convicted of the offense of indecency with a child. That majority opinion clearly points out that the defense was able to cast doubt on the credibility of the child complainant. To counter the damaging nature of this evidence to the State's case, the State called John Brogden, a certified social worker and advanced clinical practitioner. Brogden testified that children who are sexually abused almost always go through

---

1. Naturally, as this Court has recognized, the burden has shifted to the opponent to establish that the probative value is substantially outweighed, however, the mental process remains the same for making the appropriate determination. See *Montgomery v. State,* 810 S.W.2d 372 (Tex.Cr.App., 1991) (Opinion on rehearing).

certain phases over the period of time of abuse and in its aftermath. After discussing each phase or element, Brogden then proceeded to apply these abstract elements to the particulars of the instant case. After establishing a factual predicate and over a timely objection, Brogden was permitted to opine that he found every element or phase of child sexual abuse syndrome present in the case. The expert witness was thus permitted to not only identify what he considered six particular elements or phases of child sexual abuse syndrome in the abstract, but was also allowed "to testify how specific facts fit within each abstract element." He was not asked and did not volunteer an opinion whether the complainant was in fact "telling the truth." *Duckett*, supra, 797 S.W.2d at 909. This Court then identified the seminal issue crucial to the admissibility of expert testimony pursuant to Tex.R.Crim. Evid. 702, as whether the testimony is of such a nature that it would assist the jury in reaching a just verdict. We then concluded that Brogden's testimony was proper because his expertise went to a relevant issue beyond that of an average juror and it enabled the trier of fact to better comprehend the full significance of the evidence. The relevant issue was the child's behavior subsequent to the criminal incident. Brogden was allowed to explain the child-victim's post trauma behavior as a common reaction to sexual abuse where otherwise, because of the state of the evidence, it would appear impeaching because of inconsistencies. The child-victim's behavior thus fit within the common pattern of child sexual abuse syndrome:

> ... [W]itness Brodgen's testimony consisted of statements which (1) provided the jury with information concerning the six elements or phases of what the Court of Appeals termed the so-called "Child Sexual Abuse Syndrome", and (2) applied those six elements to the facts of the case. There is no doubt the State indirectly bolstered the credibility of the complaining witness. Yet our review of

the pertinent portions of the record discloses that the prosecution, except for the one time noted *infra*, did not attempt to cross the line and have its expert give a direct opinion on the truthfulness of the child. [Footnote omitted.]

Thus, in order for this genre of expertise to warrant admissibility, the expert must not directly express an opinion on the credibility of the child-victim nor must the testimony be bolstering in nature.[2] *Duckett*, supra, made it clear that the prosecution is likewise forbidden from using this expert testimony to bolster or support its own witnesses unless they have been impeached on cross-examination. *Farris v. State*, 643 S.W.2d 694 (Tex.Cr.App.1982); *Pless v. State*, 576 S.W.2d 83 (Tex.Cr.App.1978). We further stressed in the *Duckett* opinion that the expert witness Brogden was not called by the State until the child-victim had been cross-examined and effectively impeached.

The record in the case *sub judice* clearly indicates that the defense aptly attacked the complainant's credibility on cross-examination by demonstrating her numerous inconsistent statements. However, the particular testimony challenged here and presented by Lori Moore was introduced by the prosecution in its case in chief prior to the child-victim's testimony. The prosecution was in no way attempting to meet or rebut the defendant's impeaching cross-examination, but was seemingly endeavoring to lay a predicate as the reliability of the child witness. Under these circumstances I cannot conclude that appellant "opened the door" to Moore's testimony by his cross-examination. To the contrary, appellant was certainly entitled to attack the victim's testimony once it had been buttressed by the prosecution initially calling Moore.

While in *Duckett*, this Court permitted the State through the use of such expert testimony to indirectly strengthen the credibility of the complaining witness by expert rebuttal testimony, we still stood fast to the preexisting rule in this State that an

---

**2.** "'Bolstering' occurs when one item of evidence is improperly used by a party to add credence or weight to some earlier unim-

peached piece of evidence offered by the same party." *Livingston v. State*, 739 S.W.2d 311, 332 (Tex.Cr.App.1987).

expert may not give a direct opinion on the truthfulness of a child witness. The use of expert testimony must be limited to situations in which the expert's knowledge and experience on a relevant issue are beyond that of an average juror. Then, in that event, the expertise may be utilized to assist the jury to better comprehend the issue to be decided. But such testimony, although embracing an ultimate issue, may not decide the issue for the jury. The expert witness may not testify that a witness is telling the truth. Per *Duckett*, had the State queried Moore if there were some characteristics among sexually abused children and possibly had her list them for the jury, and then ask whether the child exhibited any of those traits, the line would not have been broached. This scenario allows the expert to give assistance to the jury as contemplated under Rule 702, supra, while permitting the jury to make their decision as to the credibility of the witness.

In this case, the witness was allowed to go one logical step further and state that after interviewing the child-victim, she was able to detect symptoms she recognized as an expert which confirmed her suspicion that the victim had been sexually abused. The witness was permitted to testify that the child-victim's testimony was to be believed because as an expert, the witness was able to confirm the sexual abuse. I believe that the trial court abused its discretion in admitting this expert testimony before the trier of fact. Consequently, the court of appeals was incorrect in holding that such evidence was admissible.

It should now be determined if the introduction of Moore's testimony was harmless. Accordingly, the judgment of the court of appeals should be vacated and this cause remanded to that court for a harm analysis pursuant to Tex.R.App.Proc. 81(b)(2). Because the majority does not do so I respectfully dissent.

MALONEY, J., joins.